Brusis *v.* Henkels, Appellant.

Argued November 13, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*John Paul Erwin,* with him *George D. Sheehan* and *Perry S. Bechtle,* for appellants.

*Thomas Z. Minehart,* with him *Charles A. Rothman* and *Melvin Alan Bank,* for appellees.

OPINION BY MR. JUSTICE BELL, January 11, 1954:

This involves two actions in trespass, arising out of the same accident, which were consolidated for trial before a judge and jury. One suit was brought by the operator of a tractor-trailer for personal injuries sustained by him, and the other by its owner for damages to the vehicle. In the latter action, defendants joined the operator as an additional defendant. Verdicts were rendered in favor of both plaintiffs. A third verdict was also rendered in favor of the operator as the additional defendant in the owner's case. Defendants filed motions for judgment n.o.v. and new trial, which were dismissed by the Court en banc. From the judgments entered on the verdicts, defendants now appeal.

Taking the evidence in the light most favorable to plaintiffs, and resolving all conflicts in the evidence in their favor, as we must where a defendant is seeking judgment non obstante veredicto, the facts may be thus summarized:

Plaintiff Brusis was operating on November 4, 1949 at about 12:30 o'clock A.M. a tractor-trailer owned by plaintiff States in an easterly direction on Street Road, Bucks County, Pa. The vehicle at its widest point was 7½ feet wide and 42 to 45 feet long over all. The gross weight of the loaded vehicle was 30,500 pounds.

Street Road is a macadam paved highway eighteen feet in width bounded on each side by dirt shoulders or berms. Brusis was traveling at a speed of about twenty-five miles an hour as he approached a curve bearing to his left. When one hundred to one hundred fifty feet from the curve, he saw an automobile without lights parked at the curve partly on the paved por-

tion of the highway and partly on the south shoulder. Brusis swung the tractor-trailer to the left and in passing the car, drove off the road on to the berm on the north or left side and immediately felt the left front wheel of the tractor sink in the shoulder, which he said was soft mud. The left front wheel started to sway and swing. Brusis, trying to get off the berm, kept his foot on the gas for a distance of approximately 50 feet when he crashed into a utility pole on the berm, with the result that the tractor-trailer turned over and Brusis was injured. The defendants, in order to install a ten inch gas pipe, had been excavating and back-filling a trench along the north berm of Street Road for a distance of about 8 miles. The trench was 18 inches wide and the southern edge was 15 inches to 2 feet north of the paved portion of the highway. The trench had been properly filled in by defendants 30 days prior to the accident. Plaintiff's witness, who was in charge of this work for the Commonwealth, testified that defendant had placed (a) "Road under Construction" signs along the entire route, and (b) signs along this 8 mile highway every 200 feet with the words "Soft Shoulders" printed thereon, so that they could be easily seen by vehicles approaching on the right side of the road where the pipe was laid. This evidence must be disregarded because the plaintiff himself said he saw no signs. The paved portion of Street Road has a white center line which divides the highway for eastbound and westbound traffic and is, we repeat, 18 feet in width. Even if the parked car had not been parked partly on the berm, it would have left ample space for a carefully driven tractor-trailer to pass by on the other side of the macadam paved highway.

". . . 'The mere happening of an accident is no evidence of negligence. . . . Plaintiff has the two-fold

burden of proving that the defendant was negligent and that his negligence was the proximate cause of the accident:' . . .": *Lanni v. P. R. R. Co.*, 371 Pa. 106, 109, 88 A. 2d 887.

It had rained all day. Brusis was an experienced driver. There was nothing to prevent him from seeing the parked automobile as soon as it came within range of his lights. He admits he saw it when he was a 100 to 150 feet away from it, and at that time he was driving at a speed of 25 miles an hour. He could easily have stopped his car, or he could have slowed down, or he could have continued at 25 miles an hour and in either case easily have driven past the parked car, *on the paved highway*. He did none of these. He had a minimum of 11 feet of paved highway on which he could with reasonable care have easily driven his tractor-trailer. He either carelessly or deliberately drove off the paved highway on to the soft shoulder or berm which he knew was wet from an all day rain.

Even if we assume that some signs, warning of soft shoulders, were necessary in the exercise of due care and that none were erected at the place of the accident so as to be visible to a driver traveling in a westerly direction, plaintiffs failed to prove that defendants owed and breached any duty as to them; *Dahlstrom v. Shrum*, 368 Pa. 423, 84 A. 2d 289; Restatement, Torts, §281; *Rockey v. Ernest*, 367 Pa. 538, 80 A. 2d 783.

In *Dahlstrom v. Shrum*, 368 Pa., supra, the plaintiff was injured when an automobile operated by defendant struck and killed a man on a highway, whose body was hurled through the air striking and injuring plaintiff, who was lawfully on the highway behind a bus from which she had alighted. This Court sustained a nonsuit, holding that defendant owed a duty solely to those whom a reasonable man might foresee might

be injured by driving an automobile 35 miles per hour past a bus which was standing on the opposite side of the road. The Court said (page 425) : ". . . Negligence is defined as the absence of care under the circumstances: Beck v. Stanley Company of America, 355 Pa. 608, 50 A. 2d 306; Palsgraf v. Long Island R. Co., 248 N. Y. 339, 162 N. E. 99. The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act: Scurfield v. Federal Laboratories, Inc., 335 Pa. 145, 6 A. 2d 559. In Palsgraf v. Long Island R. Co., supra, it was stated by CARDOZO, C. J. (later Justice, United States Supreme Court) : '. . . the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty.' "

In Restatement, Torts, §281, the law is thus stated (page 735) : "Comment on Clause (b) : c. Risk to class of which plaintiff is member. If the actor's conduct creates a recognizable risk of harm only to a particular class of persons, the fact that it causes harm to a person of a different class, to whom the actor could not reasonably have anticipated injury, does not render the actor liable to the persons so injured."

". . . It is well settled that conduct is negligent only if the harmful consequences thereof could reasonably have been foreseen and prevented: Leoni v. Reinhard, 327 Pa. 391, 194 A. 490; Franzen v. Goodman, 325 Pa. 518, 190 A. 888; White v. Roydhouse, 211 Pa. 13, 60 A. 316; Gaupin v. Murphy, 295 Pa. 214, 145 A. 123.": *Rockey v. Ernest,* 367 Pa. 538, 541, 80 A. 2d 783.

In *Tua v. Brentwood Motor Coach Co. et al.,* 371 Pa. 570, 92 A. 2d 209, the Court said (page 575) : ". . . But it is a cardinal rule of law that 'want of ordinary care consists in failure to anticipate what is reasonably probable—not what is remotely possible':

Camp v. Allegheny County, 263 Pa. 276, 282, 106 A. 314. . . ."

Defendant had no duty to anticipate the remote possibility of an eastbound motorist driving off the paved highway on the wrong side of the highway especially at a curve.

In the view we take of the case, it is unnecessary to decide whether Brusis was guilty of contributory negligence as a matter of law by intentionally or carelessly and unnecessarily driving his heavy tractor-trailer in rainy weather off a paved highway and on a soft shoulder, and thereafter keeping his foot on the gas for 50 feet until he ran into the pole.

The judgments are reversed and are here entered for the defendants non obstante veredicto.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

A berm is to a road what a saucer is to a cup. A brimming cup may conceivably be served without any of the contents escaping over the sides, but common experience anticipates the likelihood of a jostle, jiggle or jolt which will always cause a few drops to spill from their container. Without saucers, whose suit or dress would be innocent of mar, stain or blemish? The slip 'twixt the cup and the lip that mankind accepts as routine is the same slip that road builders foresee in movement from pavement to berm.

The majority opinion in this case quotes from *Scurfield v. Federal Laboratories, Inc.*, 335 Pa. 145, that the test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act. That the defendant-contractors in this case visualized the possibility of motorists using the berm is conclusively estab-

lished by the fact that they erected signs warning west-ward-travelling motorists to stay off the berm. Why not warn the eastward-moving travellers? Driving to the left side of the road to pass 'a parked or moving vehicle on one's own right side of the road is not only legal and proper but so commonplace that to ignore the practice would be to defy the law of the road completely. Thus the defendants could not help but know that sporadically eastward-moving wayfarers would be compelled to move to the extreme northern edge of Street Road.

While Brusis had 11 feet of paved highway over which to drive in skirting the parked automobile, it could not be said as a matter of law that he would be negligent in giving the obstacle a wide berth. It must be remembered that he was hauling a trailer loaded with 625 bushels of spinach. The nature of his cargo, the length of his vehicle (42 feet) and its width (7½ feet) compelled him to execute a wider angle in moving around the parked car than would have been sufficient if he had been operating a smaller unit passenger vehicle. Moving within 11 feet of space to the edge of the road, would have restricted him to 3½ feet of maneuverability which, with cumbersome trailer and load, would have made for a rather tight squeeze, not consistent with highway safety.

When the defendants dug along the road an 18 inch-wide trench in which to lay a 10 inch gas pipe, a duty devolved upon them to contemplate potential dangers arising out of such an operation. If they had left the ditch uncovered and a motorist exercising due care had fallen into it, there could be no doubt of their responsibility in a trespass action for resulting damages to the injured traveller.

Section 368 of Restatement, Torts, provides: "A possessor of land who creates or maintains thereon

an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact therewith while traveling with reasonable care upon the highway, is subject to liability for bodily harm thereby caused to them." In illustration of this principle, the Restatement quotes: "1. A digs a ditch immediately adjacent to a highway upon which his land abuts at a point where cars, though carefully driven, are likely to skid. B's carefully driven car skids off the highway and into the ditch. A is liable to B."

If the digger of a ditch adjoining a highway is required in law to expect a possible skidding which in itself is one of the more extraordinary incidents of motor travel, why shouldn't he be required to anticipate the ordinary experience of overtaking and passing?

The berm of a road of such muddy softness that it cannot hold the weight of a motor vehicle is just as dangerous as an open ditch. No reflective and responsible road-builder of a road flanking a precipice would cut the side of the road sheer, leaving motorists exposed, without guard rail, to the peril of death or serious bodily harm if a wheel of their vehicles moved only an inch off the highway. There is no difference so far as negligence is concerned, between a soft muddy berm and an open ditch; and the difference between a ditch and a precipice is one of degree, not principle.

The majority opinion states that the defendants owed no duty to the plaintiffs. It is true that "if the actor's conduct creates a recognizable risk of harm only to a particular class of persons, the fact that it causes harm to a person of a different class, to whom the actor could not reasonably have anticipated injury, does not render the actor liable to the persons so injured." But on the highways there is no caste. All travelers are

alike before the law. They are all entitled to be held safe from the acts of negligence of others on or near the highway.

It is also true that one is not required to anticipate "what is remotely possible," as stated in *Tua v. Brentwood Motor Coach Co.*, 371 Pa. 570, but whether or not a given mishap falls within the orbit of foreseeability is not a question of law to be decided by judges, but an issue of fact for a jury to determine.

The plaintiffs presented evidence that the defendants built a ditch 18 inches wide along the edge of a much frequented highway, that the fill-in consisted of earth of such soft and mushy content that on the night of the accident it had turned into ankle-deep mud, that the defendants did not display any signs warning eastward-moving travellers of the unsafe condition of the berm, that no lights or flares illuminated the berm or gave warning to travellers to beware of the dangerous condition caused by the soft berm, that there were no barricades to guide travellers away from the berm, and that it would require one year for the earth above the ditch to harden sufficiently to sustain vehicles. The jury found that all these factors spelled out a clear case of negligence, under proper instructions of the trial court.

I would not disturb this factual finding.