## Lewinter v. Wm. Penn Parking Lots et al.

*Mulvihill, Gollmar & Grier*, for plaintiff.

*Arthur L. McLaughlin, Jr.*, for defendant.

*J. Frank McKenna, Jr.*, City Solicitor, and *John A. Robb*, Assistant City Solicitor, for additional defendant.

BROWN, J., June 3, 1954.—This is an action in trespass, tried nonjury on March 8, 1954, and involves unusual facts which are not in dispute. Plaintiff filed a complaint against defendants R. A. Del Sardo and J. T. Stabile, a partnership, trading as William Penn Parking Lots and the latter joined as additional defendant the City of Pittsburgh, a municipality of the Commonwealth of Pennsylvania.

The testimony revealed that plaintiff, owner of a 1951 Lincoln sedan, parked the said automobile on the parking lot of defendants, on the afternoon of January 29, 1951. At about 8:30 p.m. on the same day, plaintiff returned for his car, paid the parking fee

as designated by the ticket, and the parking lot attendant went upon the lot and found that the car had been stolen by persons unknown. About 10 days later the police of the City of Pittsburgh recovered the automobile on a street, and took the car to the city auto pound, a lot used by the city for the storage of cars recovered by the police. This lot is surrounded by a wire fence seven feet high, upon which is erected three strands of barbed wire, making the entire fence some 10 feet high, and has an iron gate through which the cars are taken. This gate is locked by a chain and a padlock running through the chain. There are floodlights on the lot which give lighting facilities during the night.

The city pound attendant testified that the car was not damaged when the police brought it in, aside from the fact that it appeared to be somewhat dirty, that after parking the car on the lot, he locked the gate, this being at about 4:45 a.m., that about three-quarters of an hour later he heard a noise at the gate but paid no attention to the same because the driveway leading to the lot is also used by heavy trucks going to and from the city incinerator, that later, when he went out to the gate he found the gate had been smashed open and plaintiff's automobile had been taken from the space in which he had placed it, that he immediately notified the police and that this was the only car ever stolen out of the pound during the time he had been in charge of the same.

About 15 days later the police recovered the car, again abandoned, at which time the front end was caved in, requiring a new hood, the left fender was damaged, the bumper and front lights were broken, the paint was scratched, body and frame twisted, one of the front tires cut, the total damage amounting to $1,095, that there was also missing certain personal property, in the amount of $200, which plaintiff

claimed he had left in his car when he left it at original defendants' parking lot.

At the conclusion of the testimony counsel for original defendants moved for a directed verdict in its favor, for the reason that the liability under the bailment ceased when the city took the automobile in question, and that original defendants were not responsible for any damages that accrued after the car had been taken into custody by the city.

Additional defendant moved for a directed verdict in its favor, for the reason that the city's action was in the performance of a governmental function, and that it is not responsible for the negligence of its employes while so acting, and furthermore, that if it could be said that the city was a bailee, plaintiff could not recover against it for there was no proof to show lack of due care on its part in the handling of the bailed property.

The questions involved are as follows:

I. As to original defendants, the parking lot owners: (a) Was there negligence on the part of said defendants in the handling of the bailed property? (b) If there was negligence, was it the proximate cause of the damage to said automobile?

II. As to the additional defendant, City of Pittsburgh: (a) Was the municipality performing a governmental function?

Answering the questions of law seriatim, the first, under I(a) above is, was there negligence on the part of original defendants, the parking lot owners? Defendant in this connection relies on Toole v. Miller, 375 Pa. 509, wherein judgment n. o. v. was entered for defendant, where an airplane was stored on defendant's lot and was consumed by fire. We do not understand that that case changed the law in any regard, as the law has always been that when the bailee

fails to return the bailed property upon demand, it is incumbent upon the bailee to give an account of the matter, or assume responsibility for the loss, and that when the bailee has furnished such proofs and the same do not disclose lack of due care on his part, the bailor, in order to recover, must prove negligence on the part of the bailee: Schell v. Miller N. Broad Storage Co., Inc., 142 Pa. Superior Ct. 293; Madrid Motor Corp. v. Dawson, 166 Pa. Superior Ct. 451; Hershey v. Pgh. & West Va. Rwy. Co., 366 Pa. 158, 160, 161. However, where such proofs on the part of the bailee do not meet this test, the bailor is entitled to binding instructions: Madrid Motor Corp. v. Dawson, supra, p. 454. In our opinion, the explanation of the bailee was not sufficient to exculpate himself. This was a large parking lot, upon which many cars were parked. The only evidence in the record is that the attendant in charge could not find the car when he looked for it, and the only explanation given was that the car was stolen by persons unknown. The bailee has not made a sufficient answer when he says merely that the goods were stolen: Schell v. Miller N. Broad Storage Co., supra, p. 302.

Therefore, we find that original defendants, the bailees, were negligent, which leads us to the question I(b), was the negligence the proximate cause of the damage to the automobile?

At the outset we note that the law concerning liability of the original tortfeasor for intervening acts which create the damage, is not clear in Pennsylvania, see A. L. I. Restatement of the Law of Torts §447, Pa. Annotations, the restatement slanting its discourse in this connection by saying that the Pennsylvania law is not in full accord with the rule as laid down in Restatement, but has relied upon Wharton on Negligence, 1st ed. 1874, p. 130, sec. 134, wherein is found the following:

"Supposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that causal connection between negligence and damages is broken by the interposition of independent responsible human action. I am negligent on a particular subject-matter. Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a non-conductor, and insulates my negligence, so that I cannot be sued for the mischief which the person so intervening directly produces." See Stone v. Philadelphia et al., 302 Pa. 340, 344, 345.

While this chapter of Restatement seems to indicate that Pennsylvania has not altogether followed this rule laid down in Wharton, with clarity, cases from Roach v. Kelly, 194 Pa. 24, 31 (1899) have held:

" 'The general rule is that a man is answerable for the consequences of a fault only so far as the same are natural or proximate as may on this account be foreseen by ordinary forecast, and not for those which arise from a conjunction of his fault with other circumstances of an *extraordinary nature*' " and that " ' "the act of a third person, intervening and contributing to a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen" ' " : Nelson v. Duquesne Light Co. et al., 338 Pa. 37, 55. (Italics supplied).

There is some indication in Kline et al. v. Moyer and Albert, 325 Pa. 357, that an "ordinary" intervening negligent act is not a superseding cause which relieves the original tortfeasor, but that such an act,

to relieve the original tortfeasor, must be "extraordinary" negligence and not foreseeable. See also Schaeffer v. Jackson Twp., 150 Pa. 145 (1892), and Guca v. Pgh. Rwys. Co., 367 Pa. 579.

In Nelson v. Duquesne Light Co., supra, pp. 53 and 54 it was held:

"As to proximate cause, section 447 of Restatement of Torts, says: 'The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or (b) . . . or (c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent'. This comment is added (p. 1198) : 'e. The words " 'extraordinarily negligent' " denote the fact that men of ordinary experience and reasonable judgment, looking at the matter after the event and taking into account the prevalence of that " 'occasional negligence, which is one of the incidents of human life'," would not regard it as extraordinary that the third person's intervening act should have been done in the negligent manner in which it was done'." See also Irwin Sav. & Trust Co. v. Pa. R.R. Co., 349 Pa. 278, 295.

It is obvious that if there was any negligence on the part of the city, the same could be termed "extraordinary", for we believe it would take wide stretch of imagination to forecast the possibility that under ordinary circumstances the theft of an automobile would occur while the same was in the custody and control of those whose duty it is not only to protect property against theft but to protect it after it had been stolen and likewise to catch the thief.

Furthermore, in disposing of the motion of original defendants, we believe the negligence of said defendants was a "remote", as distinguished from the "proximate" cause of plaintiff's automobile damage, for it is axiomatic that unless the damage to plaintiff's automobile followed directly from the negligence of these defendants, plaintiff cannot recover. In the case of Nirdlinger v. American Dist. Tel. Co., 245 Pa. 453, on the question of proximate causation, the court said, at p. 459, that where there was no conflict in the testimony the question of proximate causation was for the court, and in the same case, at p. 459, laid down the following rule to govern the court's action in cases involving proximate causation:

"Of course, the defendant was not an insurer against loss; nevertheless, if defendant's loss is traceable to its negligent breach of a duty that it owed to the plaintiff, it is liable. The question is, can it be so traced to the negligence established in the case, as the primary, efficient and therefore proximate cause, or was the negligence but a remote, as distinguished from the proximate cause? Where the original cause, that is, the negligence, is by continuous operation so linked to each succeeding fact, as that all may be said to be one continuous operating succession of events, in which the first becomes naturally linked to the last, and to be its cause, and thus within the probable foresight of him whose negligence is charged, then the proximate cause is established. *Where, however, the chain is so broken that the events and facts become independent of each other, then the result cannot be said to be the natural and probable consequence of the primary cause . . . The law regards those consequences as remote, and therefore not actionable which are produced by the intervention of human agency, or the voluntary act of a person over whom the defendant has no con-*

*trol, and his act no influence."* [1] (Italics supplied.) Cited with approval in Leoni et al. v. Reinhard, 327 Pa. 391, and Brusis v. Henkels, 376 Pa. 226, 230.

Applying the test above mentioned to the facts of the present case, the automobile in question was taken by the police in the performance of a governmental function, and thereby came into the hands of municipal authorities, over which original defendants, the bailees, had no control or supervision. It was "in gremio legis" and the police, exercising supervision over the car, took it to the place provided by the city for safekeeping. Original defendants had no control over this place known as the city auto pound. The automobile was placed in said pound under the supervision of employes of the municipality, and while in the custody of these employes was taken by a person or persons unknown, and the damages occurred as the car was driven by these persons through the iron gates of the pound, and later more severely damaged when the car was in the hands of those unknown persons.

It appears to us that "the chain is so broken that the events and facts become independent of each other", and that the damage to the automobile cannot be said to be the natural and probable consequence of the negligence of original defendants, who, if charged with the want of ordinary care, could only be held " 'to anticipate what is reasonably probable—not what is remotely possible' ": Brusis v. Henkels, supra, p. 230.

Plaintiff relies upon the case of Smith v. Cohen, 116 Pa. Superior Ct. 395, wherein it was held that where an intervening act which ought to have been foreseen

---

[1] In Dominices v. Monongahela R. R. Co., 328 Pa. 203, 210, the court, instead of using the expression "the chain is so broken", used the term of (breaking) "the link of responsibility" between the negligence of one tortfeasor and the tortfeasor that causes the ultimate injury.

contributes to the original negligence, the original wrongdoer will not be excused; his negligence remains the direct cause of the loss. This case holds that it is reasonable to assume that a natural consequence of a theft of an automobile would be damage to the auto-mobile, and that defendant should anticipate that such damage would be done by the person responsible for the theft, and that the causal chain is not broken by such an intervening criminal act. This case is distinguishable from the case at bar for here we have a distinct broken chain of intervening independent, remotely possible events.

Accordingly, we hold that the motion of original defendants for a directed verdict must be granted.

Finally we come to the question raised by additional defendant in its motion, which is as follows: Was the municipality performing a governmental function?

It is clear that regulation of the use of streets is a governmental function: Doughty v. Phila. Rapid Transit Co. et al., 321 Pa. 136, that in the instant case the police were acting pursuant to the provisions of Ordinance No. 348 of 1947, approved September 5, 1947, as amended, regulating the use of city streets, and which requires the police to remove stolen automobiles therefrom. It is likewise clear that the attempt to detect theft of property and bring to justice those responsible for such thefts is a governmental function.

In the recent case of Boorse v. Springfield Twp., 377 Pa. 109, it was held that a municipality is immune from liability for torts committed by its employes in the course of performance of a governmental function, unless a right of recovery is expressly granted by statute.[2]

The Boorse case likewise held that a municipality is immune from liability for a tort committed by its

---

[2] There is no statutory right of recovery in this particular case.

police officer while he is acting within the scope of his authority, and that a municipality is not liable for a tort committed by a police officer who is not acting within the scope of his authority. In the instant case, plaintiff is caught on both horns of dilemma insofar as the action of the police is concerned, and cannot recover.

Accordingly, the motion of the City of Pittsburgh, additional defendant, for a directed verdict in its favor, is granted.

### Order of Court

And now, to wit, June 3, 1954, for the reasons set forth in the foregoing opinion, judgment is entered in favor of defendants, R. A. Del Sardo and J. T. Stabile, a partnership, trading as William Penn Parking Lots, and judgment is likewise entered in favor of the City of Pittsburgh, a municipal corporation, additional defendant. Plaintiff to pay the costs.

Eo die, exception noted to plaintiff, and bill sealed.