Listino *v.* Union Paving Company, Appellant.

Argued April 27, 1956. Before STERN, C. J., BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

re-argument refused August 1, 1956.

*Ralph S. Croskey*, with him *Croskey & Edwards*, for appellant.

*J. Grant McCabe, III*, with him *Henry T. Reath;*

*John B. Martin,* and *Duane, Morris & Heckscher,* for appellees.

OPINION BY MR. JUSTICE BELL, June 25, 1956:

Was defendant's negligence the proximate cause of the accident, or did the acts of plaintiff's husband break the causal connection and become the superseding cause of the accident?

Considering the evidence in the light most favorable to plaintiffs, as we must on a motion for judgment non obstante veredicto, these are the facts:

Clara Listino was a passenger in the car driven by her husband proceeding south on Sproul Road—a wide concrete two lane highway—at about 30 to 35 miles an hour, on the evening of November 21, 1952. The night was dark and rainy with no street lights where the accident occurred. Defendant was repairing the Sproul Road, and at a point 300 feet from the accident the travelable concrete portion of Sproul Road narrowed abruptly on plaintiff's side of the highway. There were no signs, flares, barricades or other warnings to indicate this abrupt reduction in width. Plaintiff, Aleardo Listino, knew that the Sproul Road was being repaired and before the accident had on two occasions driven past other portions which were being reconstructed. Listino drove his car off the concrete highway on to that portion of the highway which was being repaired. He felt the right wheels of his car hit mud ruts. He estimated that his car traveled in the mud about 30 feet before he was able to swerve it back on to the paved concrete portion of the highway. Approximately 270 feet from where plaintiff got back on to the concrete portion of Sproul Road, he crossed the road and was struck on the opposite side of the road sidewise, i.e. in a right angle collision, by oncoming traffic. At no time did he put on his brakes, nor did

he know whether his car skidded after he got it back onto the concrete portion of the highway. His best testimony was that he was fighting the wheel; he saw three cars coming the opposite way, then he blacked out. Clara Listino did not remember anything about the accident.

Plaintiffs produced Officer Ruthers who investigated the accident as a result of a telephone call. He testified as follows:

"There was a Studebaker sedan [plaintiff's car] *crosswise in the northbound lane of traffic.*\* We were heading south on Sproul Road, Pennsylvania Route 320. It set in a position approximately 100 yards south of where the new part of Sproul Road had been widened, where that point ended, and a point midway in the intersection of Springfield and Sproul Road. It had been struck by a car proceeding northbound on Sproul Road, a Chevrolet sedan . . . some of the mud and debris that was dragged by Mr. Listino's car from the southbound lane of the highway across in an arc to the northbound lane of the highway at the point of impact."

Immediately after the accident the officer took measurements and made a sketch of Sproul Road.

Briefly summarizing the situation, Listino was driving south on Sproul Road; when the road narrowed he ran off the paved portion; his right wheels ran along muddy ruts; he regained the concrete portion of the Sproul Road after running in the ruts for 30 feet; he then drove 270 feet in his right lane; then for reasons unknown or undisclosed he crossed over into the left northbound lane and was struck in a right angle collision by traffic in that lane.

---

\* Italics, ours.

36

It is hornbook law that plaintiff has the burden of proving that defendant's negligence was the proximate cause of the accident: *DeLuca v. Manchester Laundry and Dry Cleaning Company, Inc.*, 380 Pa. 484, 112 A. 2d 372; *Helm v. South Penn Oil Co.*, 382 Pa., 437, 114 A. 2d 909; *Lanni v. Pa. R. R. Co.*, 371 Pa. 106, 88 A. 2d 887; *Brusis v. Henkels*, 376 Pa. 226, 102 A. 2d 146. His evidence failed to sustain this burden. There was no affirmative evidence and no evidence from which it could reasonably be inferred that Listino's driving for 30 feet in soft mud ruts 300 feet from the accident, *caused him 270 feet later* to pull over at that point crosswise in front of oncoming traffic in the other lane.

The law on the subject of intervening acts and superseding cause is difficult to formulate because so many varied situations can and do arise, and for these reasons it has not always been uniformly expressed.*

The question boils down to whether the chain of causation was broken and superseded by an intervening act.

Perhaps the best expression of the principle in question is found in *DeLuca v. Manchester Laundry and Dry Cleaning Company, Inc.*, 380 Pa., supra. In that case a judgment non obstante veredicto was entered by this Court upon the ground that an intervening act of negligence was the superseding cause of the accident. Chief Justice STERN said (pages 488-492):

---

* Cf. *DeLuca v. Manchester Laundry and Dry Cleaning Company, Inc.*, 380 Pa. 484, 112 A. 2d 372; *Mastrocinque v. McCann*, 385 Pa. 33, 122 A. 2d 55; *Kline v. Moyer and Albert*, 325 Pa. 357, 191 A. 43; *Roadman v. Bellone*, 379 Pa. 483, 108 A. 2d 754; *Brusis v. Henkels*, 376 Pa. 226, 102 A. 2d 146; *Helm v. South Penn Oil Co.*, 382 Pa. 437, 114 A. 2d 909; *Coleman v. Dahl*, 371 Pa. 639, 92 A. 2d 678. Cf. also Restatement, Torts.

". . . assuming, arguendo, that the Laundry Company was guilty of a violation of the provisions of the statute and therefore negligent per se, such negligence was not a ground of liability unless it was the proximate and efficient cause of the accident in question: Hayes v. Schomaker, 302 Pa. 72, 77, 152 A. 827, 829; Hutchinson v. Follmer Trucking Company, 333 Pa. 424, 427, 5 A. 2d 182, 183; Shakley v. Lee, 368 Pa. 476, 478, 84 A. 2d 322, 323; Purol, Inc. v. Great Eastern System, Inc., 130 Pa. Superior Ct. 341, 344, 345, 197 A. 543, 544, 545; Vunak v. Walters, 157 Pa. Superior Ct. 660, 662, 43 A. 2d 536, 537. This is because an act of negligence which creates merely a passive background or circumstance of an accident does not give rise to a right of recovery if the accident was in fact caused by an intervening act of negligence which is a superseding cause: Stone v. Philadelphia, 302 Pa. 340, 153 A. 550; Schwartz v. Jaffe, 324 Pa. 324, 332, 188 A. 295, 298; Kline v. Moyer and Albert, 325 Pa. 357, 191 A. 43; Ashworth v. Hannum, 347 Pa. 393, 397, 398, 32 A. 2d 407, 409; Venorick v. Revetta, 152 Pa. Superior Ct. 455, 33 A. 2d 655.

"The question, then, is whether the parking of the Laundry Company's truck, even if it were a violation of the statute and therefore an act of negligence, was a proximate or only what the law regards as a remote cause of plaintiff's accident. . . .

"In Kline v. Moyer and Albert, 325 Pa. 357, 191 A. 43, a truck was negligently parked on the highway in the dusk of a late afternoon. A car in which the plaintiff was a guest rider started to pass the standing truck when another automobile coming in the opposite direction swerved from the rear of the truck and struck plaintiff's car in a head-on collision. The question in the case was whether a cause of action could be maintained against the driver of the standing truck or

whether his negligence had been superseded by that of the driver of the automobile which struck plaintiff's car.* It was held that if the driver of the car saw and knew of the position of the standing truck and nevertheless thereafter proceeded negligently, with the result that the accident occurred, the original negligence of the driver of the truck had become a non-causal factor divested of legal significance; as to it the chain of causation had been broken and responsibility remained solely with the operator of the offending car. The applicable principle was formulated as follows: 'Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tortfeasor, and thereafter, by an independent act of negligence, brings about an accident, the first tortfeasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause.'. . .

"Ordinarily the question whether the negligence of a defendant is a proximate cause of the accident is for the fact-finding tribunal (Landis, Administratrix v. Conestoga Transportation Company (No. 1), 349 Pa. 97, 100, 36 A. 2d 465, 466), but where the relevant facts

---

* The most recent example of superseding cause is found in *Mastrocinque v. McCann*, 385 Pa., supra. In that case, the plaintiff's decedent was a passenger in the automobile of the additional defendant. The additional defendant illegally parked his automobile on a downgrade slope of a state highway. Plaintiff's decedent got out of the car and stood behind this car on the highway to relieve himself. The car of the original defendant approached from the rear, skidded and struck and killed plaintiff's decedent. Plaintiff contended that negligence of the additional defendant, i.e. his illegal parking, was a concurrent cause of the accident. This Court held that the intervening act of the original defendant was the superseding and consequently the sole proximate cause of the accident, and entered a judgment non obstante veredicto in favor of the additional defendant.

are not in dispute and the remoteness of the causal connection between defendant's negligence and plaintiff's injury clearly appears from the evidence the question becomes one of law and, as such, is within the scope of appellate review: Rugart v. Keebler-Weyl Baking Co., 277 Pa. 408, 414, 121 A. 198, 200; Leoni v. Reinhard, 327 Pa. 391, 396, 194 A. 490, 492; Irwin Savings & Trust Company v. Pennsylvania R.R. Co., 349 Pa. 278, 283, 37 A. 2d 432, 434; Frisch v. Texas Company, 363 Pa. 619, 621, 622, 70 A. 2d 290, 291, 292; Roche v. Pennsylvania R.R. Co., 169 Pa. Superior Ct. 48, 57, 82 A. 2d 332, 337. . . ."

Aleardo Listino's own negligence was in the words of Chief Justice STERN "the proximate and efficient cause of the accident . . . the original negligence of [Union Paving Company] had become a non-causal factor divested of legal significance; as to it the chain of causation had been broken and responsibility remained solely with the operator of the offending car."

The judgment in favor of Clara Listino is reversed and is here entered for the defendant, Union Paving Company.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On the night of November 21, 1952, Aleardo Listino, with his wife riding in the car beside him, headed southwardly on Sproul Road in Delaware County, proceeding at the rate of 30 to 35 miles per hour. It was a dark, rainy and somewhat stormy night, with the road in no way lighted except by the illumination supplied by the headlights of the car. Suddenly the road ceased to exist. It was as if a giant hand from the left had pulled the highway, like a rug, from beneath the wheels of the car. The three-lane highway, over which Listino had been travelling for 2½ miles, abruptly became a

two-lane highway, leaving no concrete or asphalt flooring under his car. What had been a 38-foot pavement was now only 30 feet wide. The car, with momentum unabated, left the pavement and dropped to a terrain of mud, water and deep ruts. The steering wheel violently jolted within the driver's grasp as he fought to control the movement of the car which, after travelling 30 feet, swerved to the left, climbed to the remaining pavement, swung erratically toward the northbound lane, and, while in that lane, athwart the highway, was struck by a Chevrolet car moving northwardly. In the collision Aleardo Listino sustained some trivial hurts but his wife, Clara Listino, suffered a fractured pelvis, cerebral concussion and serious internal injuries.

Listino and his wife brought a trespass action against the Union Paving Company which was resurfacing and widening Sproul Road and which had failed to erect barricades or warning signs at or near the end of the new third lane. The jury returned a verdict in favor of Mrs. Listino in the sum of $10,000, but allowed her husband nothing. The Union Paving Company appealed to this Court seeking judgment n.o.v. against Mrs. Listino, and this Court, in what appears to me to be a wholly unsustainable position, has granted judgment n.o.v.

In its contract with the Pennsylvania Highway Department for the work on Sproul Road, the Union Paving Company bound itself to provide: "Suitable and sufficient barricades, warning signs, lanterns, red flags, torches, and/or approved reflectors shall be placed by the contractor to *adequately protect* the work under construction from damage and *the travelling public from accident and unnecessary inconvenience.*" * 

---

* Italics throughout, mine.

It agreed also that: "All barricades, danger signals, warning signs and obstructions *shall be illuminated at night* and all lights shall be kept burning from sunset until sunrise, and for such other periods of time when the barricades, danger signals, warning signals, and obstructions are not clearly visible in natural light."

At the point where the three-lane highway shrank to a two-lane highway, the defendant utterly failed to live up to the commitments above quoted. Its negligence in this respect was flagrant and culpable to the ultimate degree. The Majority of this Court, while conceding the negligence of the Union Paving Company, yet deprives Mrs. Listino of the $12,000 damages awarded her by the jury on the theory that her husband was guilty of an isolated act of negligence entirely disassociated from the negligence of the Union Paving Company.

The Majority argues as if an enormous period of time and a tremendous stretch of distance intervened between the abrupt ending of the highway and the catastrophic collision on the northbound side of the Sproul Road. Thus, the Majority says that after Listino's car climbed the pavement following its rough course over mud and ruts, "he [Listino] then drove 270 feet in his right lane." There is not a word in the record to substantiate this assertion. Listino is the only one who testified as to how the accident happened. He said: "All at once I felt that my right wheels hit ruts, deep ruts to my feelings. Well, I tried to stay with the wheel and tried to control the car, hoping I wouldn't go into a spin, until something happened, and it *threw* my car across; it swerved to the left. All I remember is that I was fighting the wheel, and I saw three cars coming the opposite way. Then I blacked out."

The Majority's visualization of Listino calmly driving 270 feet in his right lane is chimerical theory. The

testimony of Police Officer Ruthers, who visited the scene of the accident immediately after its happening, reveals the line of travel of Listino's car. He testified that he saw "mud and debris that was dragged by Mr. Listino's car from the southbound lane of the highway *across in an arc* to the northbound lane of the highway at the point of impact." This arc, written in the paved and unpaved portions of Sproul Road, tells the story of a car slithering over mud and wetness, uncontrolled and unguided by a driver who was bewildered by the leap from the paved highway, and who "blacked out" before the impact with the Chevrolet car. The very sketch submitted by defendant's counsel to this Court refutes the Majority's statement that Listino drove 270 feet on the right side of the paved highway after he had left the unpaved terrain.

The Majority reveals another erroneous conception of the evidence when it says that after Listino drove for 270 feet he then "for reasons unknown or disclosed . . . crossed over into the left northbound lane and was struck in a right angle collision by traffic in that lane." The Majority assumes that Listino, who had had 22 years' driving experience, after riding 270 feet in the right lane, suddenly, and for no conceivable reason consonant with sanity, precipitately executed a right angle turn (accepting hypothetically that such a maneuver would be geographically and mathematically possible *) and thus thrust his car into the path of another speeding car which he had already seen coming. The Majority could never have described so unrealistic, impalpable, and impossible a movement were it not proceeding on the fallacious supposition that Listino's course of travel from the pavement's abrupt ending to

---

* A car cannot be turned on a highway like a pencil on a sheet of paper.

the point of the collision with the Chevrolet was a tranquil, smooth journey under the conscious direction of Listino. The realities, of course, portray a wholly opposite picture. Listino's trip from the moment he left the paved highway to the moment he met the Chevrolet (which, incidentally, was accomplished in about *five seconds*), was a chaotic, catapulting movement over mud and slippery pavement, born of the momentum of the plunge on to the dark, slippery ground.

Another error of fact appears in the Majority's Opinion, namely, "Shortly before the accident [Listino] had on two occasions driven past the portion which was being reconstructed." "Shortly", in the context of the Opinion, suggests a day or two or even perhaps only several hours before. In point of verity, Listino had been on the Sproul Road "once or twice" "during the *two months'* period preceding the accident." This preceding trip was made in the daytime when conditions were entirely different from what they were on the night of the accident. On that preceding trip the road "was barricaded, different sections where you would detour traffic, say from one side to the other and all that." Of course there was nothing like that on the night of the accident: "Then [the night of the accident] I didn't see one barricade or anything to warn you that anything was ahead or detour, nothing at all."

Listino's car would never have gotten over to the northbound lane and it would never have been struck by the Chevrolet had it not been for the severed southbound lane of Sproul Road. Holding Listino responsible for the disaster on the northbound lane is like blaming a man, who, thrown from the roof of a building, does not find a softer place on which to land than the one which crushed his bones. It is like condemning a flying arrow for not seeking a target unrelated to the

44

trajectory it followed from the impetus of the twanging bow.

The Majority has decided that Listino's chaotic 300-foot journey from the jumping-off place on Sproul Road to the Chevrolet smash-up scene constituted an intervening event which wiped out the fault of the Union Paving Company in failing to erect barricades or warning signs at the crucial danger spot. I do not believe that the 300-foot journey was an intervening event which made it the superseding cause of the accident. The record clearly shows that it was the Union Paving Company's negligence which forced the Listino car on to the northbound side of the highway and it was Union Paving's negligence which, like a long whip, cracked over Listino and struck him down 300 feet away. What Listino did, actively or passively, was the direct result of the Union Paving's negligence which pushed him into the vortex of a whirlpool whose movements he could not possibly abate or control.

The Majority says that: "Aleardo Listino's negligence was in the words of Chief Justice STERN 'the proximate and efficient cause of the accident . . . the original negligence of [Union Paving Company] had become a non-causal factor divested of legal significance . . .'"

To say that Listino's "negligence" was the "proximate and efficient cause" of the accident is to say that a person who, bewildered and frightened by a bowlder crashing down a steep hillside, runs into it instead of away from it, is liable for his own injuries as against the man who at the top of the hill released the bowlder. To take Union Paving out of this case by saying "the original negligence of Union Paving had become a non-causal factor divested of legal significance," is like taking Macbeth out of the play *Macbeth,* and blaming

the results of that tragedy on Duncan, Banquo and Macduff.

In the case of *Thornton v. Weaber*, 380 Pa. 590, two boys were electrocuted when they attempted to pass over a cable fence which, some distance away, had been charged with electricity through the falling upon it of a high tension wire released by the defendant's negligence: a truck had broken the pole carrying the high tension wire. It was argued there on behalf of the defendant that the action of the two boys, in attempting to climb the fence, was far removed from the original act of negligence and that it thus became an intervening event which broke the chain of causation. With regard to that contention, this Court said:

"This contention assumes that a stream of fault loses its identity once it enters into a gulf of subsequent circumstance. Such an assumption does not accord with reality. An original fault carries as far as its aggressive quality influences the movements of those who come within the boundaries of its unspent force. The chain of causation can, of course, be broken by intervening events, but it does not snap merely because of the passage of time or interposition of distance. . . .

"The breaking of the high tension wire was the proximate although not the immediate cause of the fatality which followed. The law is not so unaware of reality that it will permit a tortfeasor to turn his wrongful act into immunity by asserting that the eventual damage resulted from a more immediate cause when it is clear that this immediate cause was put into operation by his own tortious conduct."

Even if I were to concede, arguendo, that Listino was in some manner to blame for the eventual collision with the Chevrolet car I still could not agree with the Majority that this failing on Listino's part would elim-

inate the Union Paving from all responsibility. In upholding its thesis of non-liability on the part of Union Paving, the Majority cites the case of *DeLuca v. Manchester Laundry and Dry Cleaning Company,* 380 Pa. 484. It is my considered judgment that the *DeLuca* case represents a gross miscarriage of justice which is apparent in the most casual reading of its facts, and I trust that some day this Court will repudiate it as no longer worthy of citation as authority for what it professes to say.

The Majority does cite *Kline v. Moyer and Albert,* 325 Pa. 357, which is indeed a splendid decision, but it fails to follow the impeccable logic therein contained. In that case, a truck driver by the name of Albert left his truck unattended on a highway. Another motorist (Moyer), driving in the same direction as the parked truck was facing, drove around the truck to the left side of the road and there collided head-on with an automobile in which the plaintiff Kline was riding. Kline sued both Moyer and Albert. The jury returned a verdict against both Moyer and Albert. The lower Court entered judgment n.o.v. in favor of Albert, asserting that Albert's negligence in leaving his truck unattended had been superseded by the negligence of Moyer in driving around it and that, therefore, only Moyer was liable in damages to the plaintiff. This Court reversed and, in doing so, laid down the rule which regrettably the Majority has today ignored. This is what Justice STERN (now Chief Justice) said: "Where a second actor [Moyer] has become aware of the existence of a potential danger created by the negligence of an original tort-feasor [Albert], and thereafter, by *an independent act of negligence,* brings about an accident, the first tort-feasor [Albert] is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proxi-

mate cause. Where, *however,* the second actor [Moyer] does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, *the negligent acts of the two tort-feasors* [Albert and Moyer] *are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties."*

I don't see how Listino's appearance on the northbound side of Sproul Road can, under the reasoning of the *Kline* case, by any elasticity of interpretation, be called an "independent act of negligence." There was no break in the chain of events which led from the broken pavement to the oncoming Chevrolet. The stream of causation which flowed from the pavement to the Chevrolet was as direct and undisconnected as a cascade falling down a mountainside. However, if, despite the helplessness of Listino as he was being carried in his wildly careening car, we are to regard as negligence his inability to control his vehicle, we must not rule out as non-negligence the tortious force of Union Paving which threw Listino into his dilemma. Thus, taking the second phase of the criterion laid down by the Chief Justice in the *Kline* case and applying it to the facts in the case at bar, we can paraphrase the Chief Justice's language as follows: Since Listino did not become apprised of the danger of the collision with the Chevrolet until his own negligence, added to that of the existing perilous condition [caused by Union Paving] had made the accident inevitable, the negligent acts of the two tort-feasors [Listino and Union Paving] are contributing causes and proximate factors in the happening of the accident and impose *liability upon both of the guilty parties.*

The criterion of proof so concretely set forth in the *Kline* case was followed in the case of *Jeloszewski v.*

*Sloan,* 375 Pa. 360, but that case was also disregarded by the Majority in its decision here. In the *Jeloszewski* case, a motorist named Swartz attempted to pass some stalled cars ahead of him and he then himself became stalled on the wrong side of the car. Later, a car driven by Jeloszewski ran into the Swartz car, but not violently. While the Swartz car and the Jeloszewski car were in juxtaposition to each other, a motorist named Sloan came along and drove into the Jeloszewski car, and certain injuries followed. Who became legally responsible for these injuries? Was Swartz liable for crossing over to the wrong side of the road? Was Sloan liable for driving into the Jeloszewski car on the road ahead of him? The present Chief Justice, in appraising that situation, said: "If Sloan, upon seeing the obstruction ahead of him and being thus apprised of the danger, could have avoided the accident, but instead was thereafter guilty of such negligent operation of his car as thereby to bring about a collision, such negligence on his part would have been the primary, active, efficient and proximate cause of the accident, thereby reducing the original negligence of Swartz to a non-causal factor divested of legal liability and breaking, as to him, the chain of causation . . . But if Sloan, through inattention to the pathway ahead of him or for any other reason, was negligent in failing to see the stalled cars until such time that the collision, even with careful operation of his car thereafter, could not have been averted, such negligence on his part would not relieve Swartz from liability, for the latter's original act of negligence would then remain as an equally contributing and proximate cause of the accident."

Placing the *Jeloszewski* rationale into the framework of the facts in the case at bar and employing as closely as possible the phraseology of the Chief Justice, we would say that: If Listino, through inattention to

the pathway ahead of him or for any other reason, was negligent in failing to see the danger of being on the northbound lane of the Sproul Road until such time that the collision with the Chevrolet car, even with careful operation of his car thereafter, could not have been averted, such negligence on his part would not relieve Union Paving from liability, for the Union Paving's original act of negligence would then remain as an equally contributing and proximate cause of the accident.

Unless the Majority here is overruling the *Kline* and the *Jeloszewski* cases, I do not see how, consistent with law, logic, and justice, it can reverse the verdict of the jury which decided that the negligence of Union Paving was a proximate cause of the accident. Although the facts were undisputed in this case, the inferences were disputed. In the *Kline* case, the Chief Justice said: "Except where the facts are undisputed, [and the inferences arising therefrom], questions of proximate cause and intervening agency are for the jury." (Bracketed words supplied). In the light, then, of the *Kline* and *Jeloszewski* decisions, the action of the Majority here constitutes an absolute invasion of the jury's prerogatives.

In addition to ignoring the precepts laid down in the *Kline, Jeloszewski,* and *Thornton* cases, the Majority is indifferent to the Restatement, Torts, Section 447, which reads as follows: "§447. Negligence of Intervening Acts. The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or (b) a reasonable man knowing the situation existing when the

act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or (c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Applying the three propositions above enumerated to the facts in the case at bar, I would say:

(a) Union Paving should have realized that the act of cutting off the pavement without putting up barricades could easily result in accidents to motorists; (b) It would not be unreasonable to foresee that a motorist thrown into the position into which Listino was forced, would act as he did in the tumultous five seconds when he was at the mercy of forces over which he had no control; (c) Listino's actions were a normal response to the situation into which he was thrown through no fault of his own.

One of the witnesses in describing the Sproul Road, said that as you reach the point at which the Listino accident occurred you "run out of highway." I am afraid that in this case, by depriving Mrs. Listino of the verdict awarded her by a jury, this Court runs out of justice.

I dissent.