## Keturah Ide *v.* The Township of Lake, Appellant.

*Negligence—Contributory negligence—Townships—Presence of boiler in road—Fright of horse.*

In an action against a township to recover damages for the death of plaintiff's husband, a judgment and verdict for plaintiff will be sustained where the evidence tends to show that the accident occurred by the deceased's horse taking fright at a boiler which was lying in the untraveled portion of the road between the fences; that its position had been known to the supervisors for many months; that it had frightened other horses; that the width of the road where the accident occurred, although not fixed by any order of court, had been defined by fences which had existed for more than fifty years; that the deceased was familiar with the road; and where the evidence is conflicting as to whether decedent's horse was gentle or not, and as to whether another road which he might have taken was or was not dangerous.

Argued April 10, 1899. Appeal, No. 377, Jan. T., 1898, by defendant, from judgment of C. P. Luzerne Co., Dec. T., 1894, No. 275, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before WOODWARD, P. J.

The facts appear by the following portions of the charge of the court:

This is an action of trespass brought by Mrs. Keturah Ide, against the township of Lake, in this county, to recover damages for the loss of her husband occasioned, as she alleges, by

an accident which occurred on August 30, 1894, which acci-
dent she also alleges resulted from the negligence of this town-
ship, in permitting a certain boiler to remain on or near the
road, which caused fright to this horse, resulting in a runaway
which produced injuries causing the death of her husband,
seven days after the accident. . . . It being admitted that death
in this case was caused by the injuries received from the acci-
dent which has been detailed to you by the witnesses, . . . .
we come next to this inquiry: Does the evidence in this case
satisfy you that the township of Lake by its supervisors was
negligent; have they failed to do something which they ought
to have done, or have they done something in the premises
which they ought not to have done which contributed to and
caused the accident which resulted fatally to the husband of
the plaintiff? [And this naturally and logically brings us to a
consideration next, of what is the relation of the township to
its public roads, and what are the duties of the township officers
in relation thereto, and in this connection we call your atten-
tion at the outset to our statute on the subject. The Act of
June 13, 1836, P. L. 556, sec. 6, reads as follows: "The pub-
lic roads or highways laid out, approved and entered on record
as aforesaid, shall, as soon as may be practicable, be effectually
opened and constantly kept in repair, and the public roads or
highways made or to be made shall at all seasons be kept clear
of all impediments to easy and convenient passing and travel-
ing at the expense of the respective townships as the law shall
direct."] [5] The roads are to be kept in good order and re-
pair, and this is to be done by the supervisors of the township,
and the duty thus imposed on township supervisors is an active
one. They are not to await the occurrence of an accident or a
disaster before making necessary repairs or taking ordinary
precautions for safety, but they are, from time to time, to look
after the roads in their respective townships, and if possible
provide against the possibility or probability of accidents oc-
curring from defects in the highway. Supervisors have an ac-
tive duty to perform to the public and to the township, and
their negligence is imputed to the township; their failure to
do what they ought to do is considered in the eye of the law
the failure of the township itself. In some cases it may become
necessary to prove that the supervisors of any township have

had actual notice, formal notice, of a defect in the highway. In the present case it does not seem to be important to dwell upon that bran.ch of the case, for the reason that there can be no doubt that the supervisor of this township, he who had in charge this department of the township and the roads in it, had full notice and knowledge for many months before this accident, of the fact that the boiler lay where it did, near the roadway. Again, where was this road? How wide was it?' What were the duties of the supervisor in regard to this boiler under all the circumstances of the case? You are familiar, in a general way no doubt, with the fact that roads in townships are laid out by certain proceedings had in court, based on a petition setting forth the necessity for the road, and then the appointment of viewers to report upon the location, accompanying their report with a diagram or draft, assessing damages, if any, to be paid to the adjoining owners, and upon the filing in court and the final confirmation of this report, the road is said to be established and put in charge of the township authorities. In the present case it seems that in November, 1842, upon petition filed for the purpose, the court appointed viewers to review, vacate and relay a road in Lake township, and, from an examination of the proceedings, it seems apparent that there had been another road which was considered a poor location because it ran over a hilly country, and the idea of this petition seems to have been to have a review of this old road, and if possible have it vacated, and in its stead a new road relaid in Lake township, substantially running in the same direction and reaching the same termini that the old road did. The law requires that upon a report being filed and confirmed nisi, or conditionally, the court shall fix the width of the road, and then another term shall be allowed to pass in order to file exceptions if necessary to the report, before the final confirmation of the road. It appears in the present case, that this fixing of the width of this road by the court, at the time of the first filing of the report of viewers was neglected. It does not appear upon the file itself or upon the record kept by the county clerk that the court did their duty in this respect. It was overlooked by some accident at least, and the width of the road was never fixed by an order of the court, and therefore, it becomes a question in this case, and a question of considerable importance as

you will readily see, to decide where this road was, or, rather what was the width of this road, in the absence of any decree or order of the court fixing the width, and to this branch of the case we have given considerable attention because the question is not free from difficulty, and is not a customary or usual question in court. We have already stated to you that roads generally are established upon a report of viewers, the width being fixed by the court. We now say to you that in an old road like this, more than fifty years ago laid out, according to the report, it is competent to show, with a view of fixing the width of the highway, what has been the appearance of things along the route of that road, and what has been the use by the public of the road in question, for a road may be established in some other ways in view of the great length of time which has elapsed. A road may be established in other ways than by the ordinary and usual way of a decree. On this point we are not without authority in this commonwealth, and, although the argument has not been much devoted to it, I consider it my duty to call your attention to the subject. And we say to you that where a road is opened and there is no clear evidence in the record as to its width we may find that a certain space has been dedicated as a road to public use by other circumstances, by other facts ; or, as our Supreme Court have said in the case of Griffin's Appeal, 109 Pa. 155 : "Dedication is a matter of intention, and when clearly proved is as complete in one day as in twenty-one years. Where there is no opposing proof, long continued use by the public is evidence of an intent to dedicate, but it is by no means conclusive, and always yields to contrary proof of a satisfactory character." In Commonwealth v. Cole, 26 Pa. 189, the Supreme Court said : "To prevent any future controversy, it is proper for us to add that the use of the ground by the public as a highway for more than twenty-one years made it a public road just as effectually as though it had been originally laid out and opened by the proper authorities." In Schenley v. Commonwealth, 36 Pa. 59, the Supreme Court, in speaking of this subject, said : "Nor is it necessary to a dedication that there has been twenty-one years of adverse enjoyment, though it is to the presumption of a grant, when time alone is relied upon to raise it. And whenever there is an actual giving of land for a public highway, accepted by the pub-

lic, though there be no deed, the dedication is complete. The period of twenty-one years of enjoyment, after which a presumption of a grant is made, is fixed from analogy of the statute of limitations, and for the same reason for which it is not per-. mitted to add coverture to infancy."

[The testimony in this case is that, for quite fifty years, the fences have been so located upon the ground in question as to indicate a road varying from forty to fifty feet, as testified to by the witnesses. I think Judge LYNCH said it was about fifty, but the most of the testimony is that the road is from forty to forty-five feet. I believe the exact measurement makes it forty feet. And we say to you that in our opinion as a matter of law, if it is the truth of this case, that for fifty years those fences have remained as they are now, the whole width was the public road at that point, and although only a portion of it was actually driven over by teams or worked by the supervisors, they still had the same authority over the forty feet that they would have had if the road had been laid out properly by an order of the court to that extent.] [6]

[We come now to the location of the boiler which it is alleged was the cause of this disaster by frightening the horse and causing him to run away; and while there is a good deal of dispute as to exactly where the boiler did lie with relation to the traveled portion of the road, there is no dispute, as I remember, that the boiler lay within the confines of the fences; that it was not located upon any private property; but that it rested upon the ground covered by the forty feet which I feel bound to say was the road there. Therefore, in my judgment, it is not very material in the present case whether this boiler lay two feet or five feet or ten feet from the track ordinarily used by those who traveled the road with vehicles. It lay within the road, the land dedicated to the public for the purpose and not claimed by any private owner, and used for fifty years in that way; and therefore the boiler lay there in the road or in the land dedicated to the public as a road.] [7] [Now, that being the law of the case, what was the duty of the township and the township supervisors? Clearly if this was an object calculated to frighten horses and interfere with the ordinary use of the road, the safe use of that road, it would become the duty of the supervisors to have it removed as soon as they had notice of its being there, or as

soon thereafter as would be reasonably convenient and possible.] [8] Now, gentlemen, we have thus far dwelt on one point, and that was this : Does the evidence disclose negligence on the part of this township consisting in its failure to remove this obstacle to reasonably safe travel upon that highway? If you do not believe that the township has been negligent under the evidence, that is the end of this case, because the suit is founded upon the alleged negligence of the township. If you find, however, that they were negligent, if you believe the testimony which states that many horses have been frightened by this object, that it was allowed to remain there for many months after notice of these facts to the supervisor, and you find that in this respect the township has been negligent, then you come to another question of great importance in this case. Was the plaintiff himself negligent, did his own negligence contribute in any degree to the happening of this disaster which resulted in his death; because the law is that, no matter how negligent a defendant may have been, if the evidence clearly satisfies the jury that the deceased himself had also been negligent, and that his negligence contributed in any degree to the happening of the disaster, then there can be no recovery of damages, because the courts will not stop to consider or weigh which was the more to blame under such circumstances, but will declare that no recovery in any amount can be had by the plaintiff from the defendant. Now, it is claimed by the defendant in this case that the deceased was a frequent traveler upon this highway; that he knew of the existence of this boiler and its location, and he must have known that it was an object likely to frighten a horse. And we say to you in this connection that if Mr. Ide knew well about the location of the boiler, had been made aware of the fact that it had frightened other horses as well as his own, on former occasions, if that were the fact, then he would be held to a higher degree of care and caution and prudence in driving that road at that point than a man would be who was a stranger to the road and entirely unfamiliar with the danger. Therefore all the evidence bearing upon his knowledge of the facts as they existed there is important for your consideration on this question as to whether he was negligent himself. [Very much of the evidence in this case upon this subject of concurrent negligence has had reference to the character of this horse which he

drove.  It seems that this horse was a new one on this route;
that formerly Mr. Ide had driven another horse on his monthly
trips, and it would seem from the evidence in the case that the
horse had been frightened before and on the same day of the
accident in question; and it would seem further that he was a
horse easily frightened by certain causes, unusual noises or un-
usual objects.  .It is claimed by the defense in this case that
they have shown you that this horse, in view of all these facts,
was an unsafe horse, not easily controlled, a vicious horse to a
certain extent, and that therefore the deceased was guilty of
negligence in driving such a horse at all, especially over a road
known to be dangerous by reason of the boiler.  But, on the
other hand, there is a large amount of testimony in this case for
, you to consider that this horse immediately after the accident
or very soon after was found to be an ordinarily gentle horse;
that he was driven single, as it is called, and double; that he
was driven where cars were, where locomotives were, and driven
by the members of a family, one of whom, a young lady, seven-
teen or eighteen years of age, states that she drove the horse
for several months, and carried the mail, I think, twelve miles,
without accident or disaster, and the only fault she found with
the horse was that he was too slow.] [9]    [There is no abso-
lute rule, gentlemen, that the court can lay down to you as a
matter of law as to what constitutes a dangerous horse, or a
horse that it would be negligent or imprudent to drive.] [10]
It has been shown, or said here by counsel, and I think proved
to some extent, that horses differ very much; that some horses
will frighten at a very small object, and from slight causes,
while they will pass what would apparently be a greater cause
for alarm without showing any evidence of distress or fright;
and it will be for the jury to say whether under all the evidence
on this subject, fairly considered, this horse was so unsafe, dan-
gerous and when frightened so uncontrollable, as would make it
negligence for his owner to use him upon the ordinary highways
of the county, or, to be more definite, upon such a highway as
this one was where this boiler was known to be.  Do you be-
lieve, as honest men acting under the obligations of your oaths,
that this was a dangerous, unsafe and uncontrollable horse, and
so skittish and fractious and wild that a fairly careful, prudent
man would refuse to drive him over the roads and highways of

the country? And this point becomes important for your consideration, because it bears directly on this question of the contributory negligence of the deceased, and, therefore, it ought to receive at your hands careful consideration.

[We come then to the question of the wagon. It is claimed by the defense and shown that, owing to and as one of the results of a previous runaway by this horse, this wagon had been very much damaged, one wheel broken, spokes broken out which had been hastily and roughly repaired, and that the harness had been torn and been temporarily rearranged and mended, and it is argued that it was negligence on the part of the deceased to use such a wagon under the circumstances, and trust himself in such a vehicle drawn by such a horse over such a road. All that is for your consideration also, when you come to think about this question whether the deceased was negligent himself, and whether his negligence contributed in any degree to the accident which resulted in his death.] [11] When there are two roads between two points, and a man has a horse easily frightened and a wagon that is not entirely safe, and the one road is much safer than the other, a prudent man of course would be bound to take the safe road in preference to the dangerous one. It is claimed here that there was another road that this man might have taken. It is alleged, on the other hand, that the other road was as dangerous, if not more dangerous, than the one he traveled. And all this evidence also is to be carefully considered by the jury in reaching their conclusion as to the contributory negligence of the deceased.

There is one other question to which I call your attention. There is some evidence in the case that the boiler was not the cause of the horse's fright and runaway, but that he had frightened before he reached the boiler, and that the presence of the boiler had nothing to do with his running away, or with the disaster which occurred. Of course, gentlemen, if you are satisfied that that is the truth of this case, your verdict should be for the defendant, because the whole case of the plaintiff is based on the supposition and theory that it was the negligence of the township which caused the accident, or runaway, by leaving the boiler where it was left. If you find the horse frightened at something else, and that the boiler had nothing to do with his fright and nothing to do with causing the accident,

the verdict should be for the defendant, because the plaintiff has failed in one of the main points of his evidence.

Verdict and judgment for plaintiff for $5,500. Defendant appealed.

*Errors assigned* among others were (5–11) above instructions, quoting them.

*Edwin Shortz* and *Alexander Farnham*, for appellant.—The question of contributory negligence is a mixed question of law and fact. When the facts are undisputed the court should declare the law thereon : Hoag & Alger v. Lake Shore, etc., Railroad Co., 85 Pa. 293; Gramlich v. Wurst, 86 Pa. 74; City of Harrisburg v. Saylor, 87 Pa. 216; Erie v. Magill, 101 Pa. 617; Koons v. Western Union Tel. Co., 102 Pa. 164; Penna. R. Co. v. Jacob Peters, 116 Pa. 206; Barnes v. Sowden, 119 Pa. 53; Railroad Co. v. Jones, 128 Pa. 308; Fisher v. Railway Co., 131 Pa. 292; Congle v. McKee et al., 151 Pa. 602; Baker v. Gas Co., 157 Pa. 593.

There is no duty on the township to provide for travel by exceptionally vicious, untrained or unmanageable animals : Betting v. Maxatawny, 177 Pa. 217.

A traveler on a public road who does not avoid a known danger when he can do so is guilty of contributory negligence : Pittsburg Southern Ry. Co. v. Taylor, 104 Pa. 306; Forks Twp. v. King, 84 Pa. 230; Hill v. Tionesta Twp., 146 Pa. 230; Winner v. Oakland, 158 Pa. 405.

*Paul J. Sherwood*, for appellee.—When objects ordinarily calculated to frighten roadworthy horses are placed and suffered to remain upon the public highway they are regarded as obstructions, and after due notice to the public authorities a township is liable for injuries caused thereby : N. Manheim Twp. v. Arnold, 119 Pa. 380; Dixon v. Butler Twp., 4 Pa. Superior Ct. 333; Piolet v. Simmers, 106 Pa. 95; Hewison v. City of New Haven, 34 Conn. 136; Haines v. Barclay Twp., 181 Pa. 521; Morse v. Town of Richmond, 41 Vt. 435; Plymouth Twp. v. Graver, 125 Pa. 24; Jackson Twp. v. Wagner, 127 Pa. 184; Hey v. Philadelphia, 81 Pa. 44; Fritsch v. Allegheny, 91 Pa. 226; Lower Macungie Twp. v. Merkhoffer, 71 Pa. 276; Trex-

ler v. Greenwich Twp., 168 Pa. 214; Pittston v. Hart, 89 Pa. 389; Act of June 13, 1836, P. L. 556, sec. 6.

PER CURIAM, April 24, 1899:

This action was brought to recover damages for the death of plaintiff's husband which resulted, as she alleges, from the negligence of defendant township.

The evidence involved the question of defendant's negligence, as the proximate cause of Mr. Ide's death, and also the question of his alleged contributory negligence; both of which were clearly questions of fact for the exclusive consideration of the jury. They were accordingly submitted to them by the learned president of the common pleas with instructions which are fully adequate and free from any error of which the defendant has any just reason to complain. The jury found for the plaintiff and assessed her damages at $5,500. Both questions of fact were thus definitively settled by the jury in plaintiff's favor; and the judgment entered on the verdict should not be disturbed unless the learned judge erred in one or more of the particulars ·specified in the assignments of error. A careful consideration of the record with special reference to these has satisfied us that his rulings and instructions are substantially correct.

The case was ably and correctly tried; and we find nothing in either of the specifications that requires explanation or discussion.

Judgment affirmed.