Blassotti v. Greensboro Gas Co., Appellant.

Argued April 19, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*E. C. Higbee* of *Higbee, Matthews and Lewellyn,* for appellant.

*John Duggan, Jr.,* for appellee.

OPINION BY KELLER, J., July 14, 1932:

The plaintiff, Blassotti, brought this action in trespass against the defendant for the damages he had sustained in the destruction of his automobile, through the negligent location and maintenance in a public road of an appliance in connection with defendant's natural gas line.

About ten o'clock on a dark night, (April 13, 1926), the plaintiff started to drive his Dodge coupe from the improved Masontown-Uniontown road to Footedale. The Footedale road was an unimproved dirt road, thirty-three feet wide between fences. Between twenty-one and twenty-five feet of this width was taken up by the beaten roadway, the rest being a ditch and small bank, etc., on either side. The traveled portion of the road was in bad condition, at the time, with ruts so deep that the axles scraped the road, and after the plaintiff had gone about one hundred and fifty yards he found that it was impassable and decided that the best thing he could do was to turn around and go back. At this point the road seemed almost level for its full width, and the fence on the south side had been removed for several rods in connection with the laying of defendant's pipe line. While in the act of turning his car he hit a valve, or iron projection above a valve, in the defendant's gas pipe line, which was about four to six inches in diameter and which stuck up about eight to ten inches above the road,—but which the plaintiff had not seen—and broke it; and the gas, in some way,

became ignited and burned the car. The valve was located between two and three feet away from the beaten roadway and about the same distance from the fence line, and was just at the edge of the shallow ditch along the side of the road. The pipe line itself was buried underground, but at this point, where it crossed the road, there was the projection above described.

From the judgment, following a verdict for the plaintiff, the defendant has appealed. The case was here before in 96 Pa. Superior Ct. 162.

There was no proof in the case of the Footedale road having been laid out by court order, and the appellant contends that it must be considered as a road by prescription; and applying the rule that where the public has acquired rights in a street or road by prescription, and not by dedication, such prescriptive right will include only land actually used for street or road purposes, (Ryman v. Borough of Girard, 73 Pa. Superior Ct. 57), insists that the road must be limited to the beaten or traveled portion, and that as the defendant's valve projection was two or three feet away from the beaten or traveled part, it was not in the public highway at all, and that judgment non obstante veredicto should have been entered for it. The facts in evidence, however, prevent our accepting this view. The road between fences was thirty-three feet wide, the width of the ordinary country road, and had been that width for at least thirty years. The supervisors of the township worked the road from fence line to fence line; cut the weeds etc., growing between the fences and the ditches, cleaned out the ditches and deposited the material thus removed from the ditches, etc., on the surface of the beaten part. The public road, thus recognized and worked by the supervisors was thirty-three feet wide, not the varying width made by the tracks of passing vehicles. The ditches alongside and draining the road, when worked on by the

supervisors as part of the road, are just as much included in the public road as the beaten track, (Ide v. Lake Twp., 191 Pa. 182). No one can doubt that if the township or the State had seen fit to improve this road for its full width of thirty-three feet, it could have done so without paying damages to the adjoining landowners for the land. Differing from Ryman v. Borough of Girard, supra, none of it was in the exclusive possession of anyone but the public, and anyone could drive over any part of it without being guilty of a trespass. In fact, the statutory right of the defendant to have its gas pipe where it was, (Act of May 29, 1885, P. L. 29, sec. 10), was based on the assumption that it was laid in the public highway. See Lamb v. Pike Twp., 215 Pa. 516; Potter v. Natural Gas. Co., 183 Pa. 575.

The court below having correctly ruled that the defendant's valve or valve covering was located in the public highway, submitted the question of its negligence in maintaining it there to the jury in accordance with the pronouncements of the Supreme Court in Potter v. The Natural Gas Co., supra; Ide v. Lake Twp., supra; Lamb v. Pike Twp., supra; Emery v. Phila., 208 Pa. 492; and kindred cases; and the verdict for the plaintiff resolves any disputed questions of fact in his favor. Indeed it is not hard to understand that a jury might find a projection of this size, so near the traveled portion of the highway, a more dangerous obstruction than a much larger one, such as a post or pole, which would be more easily seen by travelers on the road.

The plaintiff had not been on the Footedale road for eighteen months and was not acquainted with its bad condition on the night he attempted to use it. It had not been closed to travel and he could not be held guilty of contributory negligence because he used it instead of another and more improved highway: Henigin v. Booth & Flinn, 307 Pa. 528; or because

he was off the beaten path in an attempt to turn and go back after he became satisfied that the road was impassable. Furthermore this action is not against the township authorities for damages caused by the bad condition of the roadway as in Winner v. Oakland Twp., 158 Pa. 405; Stauffer v. Shenandoah Boro, 63 Pa. Superior Ct. 178, but against the defendant for the negligent maintenance of an obstruction, dangerous to travel, in the road. Evidence of the bad and impassable condition of the road was properly admitted in explanation of how the plaintiff came to be off the usually traveled portion in an endeavor to turn around and go back. Evidence of witnesses as to the location of the valve projection in the road was properly received. The engineer, who prepared the draft, had not located the valve on the ground, but only from the statement of a witness as to its location.

Nor do we find any error in the refusal of the court below to withdraw a juror and continue the case because of the remarks of plaintiff's counsel in his closing talk to the jury. The remarks objected to did not constitute an unfair presentation, by way of argument, of the plaintiff's case, but concerned matters which might properly be considered by the jury.

The nineteenth assignment of error is so well answered in the opinion of the court below that we adopt the following extract from it: "While the trial was in progress, E. C. Higbee, Esq., of counsel for defendant, made the following motion: 'Your Honor please, the defendant moves to withdraw Juror Number Nine, for the reason that he was talking to the plaintiff and commenting about the case and the conduct of the case and the conduct of counsel, after court adjourned last night'...... After the motion was made, we had the plaintiff sworn and examined in open court. His testimony was to the effect that at the close of the afternoon session, as jurors, witnesses, and

others were leaving the court house, Juror Number Nine spoke to him in the presence of five or six of his witnesses, as they were walking along the street, and made a remark that counsel was rather slow. This is all the juror said. This remark was no doubt occasioned by the fact that counsel were spatting back and forth during the trial, and also there were numerous exceptions taken to the rulings of the Court, which may have appeared to him to have delayed the trial. There were present with the plaintiff, at the time the remark was made, Frank Martin, Mabon Harbison, and William Cavalcante, witnesses in the case. These men are good citizens, and reliable, and could have been called by Mr. Higbee if he had desired to prove that Mr. Blassotti had not told all of the conversation. The case was tried in Court Room Number Three, which is located on the second floor of the court. We have only one elevator in the building, and in leaving the court house practically everyone uses the same exit, going out the front way onto Main Street, and then westwardly on Main Street. It is the daily practice, during the trial of cases, for attorneys, jurors, witnesses, spectators, and others, to intermingle as they leave the court rooms and the court house. Of course, this often results in attorneys and others passing the time of day, or speaking in a casual way to jurors. While it is reprehensible conduct for any person to speak to a juror, or for a juror to speak to anyone about the case while it is being tried, yet in the present case we are satisfied that the alleged misconduct of the juror was so trivial that we would not be warranted in granting a retrial. We are satisfied that this juror was not biased or prejudiced, and that neither he nor the plaintiff nor any of the persons present thought there was anything improper in the remark which was made.''

In a somewhat similar, but less excusable, situation the Supreme Court adopted the following language of

the court below: "The charges made on behalf of defendant of misconduct on the part of a juror were deemed by this court worthy of the most searching scrutiny, and the closest attention, but as before indicated, the weight of the testimony discloses a case of casual statement, showing a tendency to gossip rather than a prejudice against the defendant. Such tendency to gossip is to be reprehended, and jurors should remember that 'silence is golden,' but at the same time I fail to see how the defendant was injured, or why a new trial should be granted on this ground": Com. v. Hurd, 177 Pa. 481, 490.

We are satisfied that the reference of the juror to counsel's "slowness" was not a criticism of the attorney for the defendant indicating any bias against him, but a casual expression on his part that the case was progressing a little slowly. If by his reference to "counsel" the juror had in mind the counsel for one side, rather than all the counsel in the case, there is nothing to indicate that he referred to counsel for defendant rather than counsel for plaintiff. We agree that it does not warrant a new trial. As was well said by the learned president of the court below: "It has been over five years since the plaintiff's car was destroyed. If substantial justice is to be accorded in this case, it is high time that this case was disposed of. We see no reason why the last verdict of the jury should be disturbed."

The assignments of error are overruled and the judgment is affirmed.