Helm *v.* South Penn Oil Company, Appellant.

438

Argued April 22, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*W. D. Gallup,* with him *E. G. Potter, Robert J. Healy, John E. Selden* and *Gallup, Potter & Gallup,* for appellant.

*Harold S. Hampson,* with him *Samuel F. Bonavita* and *Robert B. Apple,* for appellee.

OPINION BY MR. JUSTICE BELL, June 27, 1955:

Is South Penn Oil Company entitled to a judgment non obstante veredicto?

A highway known as Route 666 in Warren County runs in a northerly-southerly direction, and in the vicinity of this tragic accident it is a level straight road which has *a hard surface paving* of approximately 16 feet in width. The evidence in this case is unfortunately not clear with respect to a number of im-

portant facts. However, viewing the testimony in the light most favorable to the plaintiff, the jury could have found as follows.

On the westerly side of the road is *a berm of approximately 4 feet in width* which falls off rather sharply a distance of approximately 3 feet into a 10 inch deep (wide?) drainage ditch (for the highway). Defendant owns a naptha plant which is located between 200 and 300 feet west of the place where the accident occurred. A 2 inch gas line runs from the plant down toward the road. The line is made up of various joints of pipe through which natural gas is transported from the plant in an easterly direction. A wooded area begins approximately 25 feet west of the road. As the gas line emerges from the wooded area into a brush-cleared area, the pipe line becomes visible because half of it is buried and half is above ground. About 5 to 6 feet from the edge of the road, the 2 inch gas line emerges from the ground and passes over the ditch about 2 feet above the bottom of the ditch and then follows the incline of the bank toward the road; as it nears the road it enters and passes through the ground under the road.

Ewing's truck, which was proceeding along Route 666 in a northerly direction, between midnight and 2 o'clock on the somewhat foggy morning of July 1, 1949, ran off the road and over the west berm and into the ditch or brush area beyond the ditch. Ewing did not testify at the trial.

There was no evidence that the truck ever ran into or ran across or struck the gas pipe. Plaintiff testified that the right wheel of the truck was in the ditch and its left wheel was on the berm of the highway. A mechanic, who went to repair the gas line, testified that the gas line had been broken off at the elbow or swing, bent in a sort of a semi-circle, and again broken off,

pulled out of the union, which was approximately 11 feet from a connection back to the union, and the pipe was bent in a sort of semi-circle shape which would break it out of the cast iron elbow above. The evidence was so contradictory and confusing that it is very difficult, if not impossible to ascertain *exactly* where the break in the pipe was in proximity to the ditch or to the highway.

Ewing sought the assistance of the plaintiff (a passing automobilist) and gave him flares for the purpose of lighting the area adjacent to the damaged truck. Helm lighted several flares and as he walked with one of them near the vicinity of the broken gas pipe there was an explosion and he was "engulfed in a ball of fire." His clothing caught on fire, and he suffered burns of the hands, right arm, back, legs, hips, face and ears. The jury returned an unusual verdict, to wit, a verdict in favor of plaintiff and against the gas oil company in the sum of $17,500, but not against Ewing. However, the jury made a special or specific finding: "Do you find that Frank Ewing, (additional defendant), is liable over to defendant, South Penn Oil Company, for any damage that may be suffered by the latter as a result of your verdict?" The jury answered "Yes."

No question is or could successfully be raised as to the negligence of Ewing, the truck driver, whom the jury could have found by reasonable and legitimate inference from the evidence, had negligently driven off the road and broken the gas pipe which caused plaintiff's injuries.

The South Penn Oil Company moved for a new trial and for judgment non obstante veredicto, both of which motions were dismissed; and a judgment was entered on the verdict from which judgment this appeal was taken.

The pertinent principles of law are well settled; borderline cases sometimes make their application very difficult. A high degree of care must be exercised by those who erect or operate dangerous instrumentalities. Whether a failure to run the gas pipe line underground amounts to negligence is sometimes a question for the jury and sometimes a question for the Court. The narrow question in this case boils down to whether we can say as a matter of law that the gas oil company could not have reasonably foreseen the likelihood of harm to the plaintiff (or one of his class) resulting from the erection of its pipe line above the ground in an area so close to the highway.

The law is thus stated in *Brusis v. Henkels*, 376 Pa. 226, 102 A. 2d 146, at pages 228, 229, 230, 231: " ' ". . . Plaintiff has the two-fold burden of proving that the defendant was negligent and that his negligence was the proximate cause of the accident:" . . .': Lanni v. P. R. R. Co., 371 Pa. 106, 109, 88 A. 2d 887.

. . .

"In Dahlstrom v. Shrum, 368 Pa., supra, the plaintiff was injured when an automobile operated by defendant struck and killed a man on a highway . . . [his] body was hurled through the air striking and injuring plaintiff, who was lawfully on the highway behind a bus from which she had alighted. This Court sustained a nonsuit . . . The Court [speaking through **Mr. Justice Stearne**] said (page 425): '. . . Negligence is defined as the absence of care under the circumstances: Beck v. Stanley Company of America, 355 Pa. 608, 50 A. 2d 306; Palsgraf v. Long Island R. Co., 248 N. Y. 339, 162 N. E. 99. The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act: Scurfield v. Federal Laboratories, Inc., 335 Pa. 145, 6 A. 2d 559. In Palsgraf v.

Long Island R. Co., supra, it was stated by CARDOZO, C. J. (later Justice, United States Supreme Court): ". . . the orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty." '

" '. . . It is well settled that conduct is negligent only if the harmful consequences thereof could reasonably have been foreseen and prevented: Leoni v. Reinhard, 327 Pa. 391, 194 A. 490; Franzen v. Goodman, 325 Pa. 518, 190 A. 888; White v. Roydhouse, 211 Pa. 13, 60 A. 316; Gaupin v. Murphy, 295 Pa. 214, 145 A. 123.': Rockey v. Ernest, 367 Pa. 538, 541, 80 A. 2d 783.

"In Tua v. Brentwood Motor Coach Co. et al., 371 Pa. 570, 92 A. 2d 209, the Court said (page 575) : '. . . But it is a cardinal rule of law that "want of ordinary care consists in failure to anticipate what is reasonably probable—not what is remotely possible": Camp v. Allegheny County, 263 Pa. 276, 282, 106 A. 314. . .' "

In *Brusis v. Henkels* defendants in order to install a 10 inch gas pipe had excavated and back-filled a trench along the north side of a berm of the road. The berm extended 15 inches to 2 feet from the paved portion of the highway and the shoulders were still soft and dangerous. Warning signs (for soft and dangerous shoulders) were posted on the trench side so they could be seen by automobilists traveling on that side of the road. This Court held that the contractor was not liable to a tractor-trailer driver who drove off the paved highway on the wrong side of the road.

The instant case is even stronger for the defendant than the *Brusis* case. The likelihood of harm to the plaintiff (or to other users of the highway) could not have been reasonably foreseen from the act of erecting or maintaining the gas pipe line at the position at which it was located and consequently the plaintiff was not within the defendant's orbit of duty.

The judgment entered on the verdict against South Penn Oil Company is reversed and judgment is here entered in its favor non obstante veredicto.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

This lawsuit is the story of a road Samaritan who stopped along a highway to give aid to a stricken fellow-traveller and, as a consequence, sustained serious injuries himself, injuries which will cripple and mark him until he goes to his grave. He turned to the courts for redress but he has been so rebuffed that for the rest of his days he will undoubtedly harbor in his heart a bitter regret that he ever responded to the Christian urge to render assistance to a fellow human being on the highway of life.

The South Penn Oil Company which owns a naphtha plant some two or three hundred feet from the Henry Mills Road in Warren County, maintained in the summer of 1949 a pipeline which extended from its plant to the road. For some distance before the line dipped beneath the road to reach the other side it travelled at a height of two feet above the ground. A shallow drainage ditch of some 10 inches depth bordered the road and the pipe at this point rose to a height of some three feet. However, bushes and seasonal foliage concealed it from general view.

On the night of July 1, 1949, Frank Ewing was driving his truck on this Henry Mills Road. When he reached the immediate vicinity of the gas pipe described, the front wheels of his truck slipped into the drainage ditch and he apparently became wedged there. He got out of the truck and flagged for assistance from the first vehicle coming by. This vehicle happened to be an automobile driven by Bruce E.

Helm, the plaintiff in this case, who was on his way to a town named Barnes. Helm stopped and offered to take Ewing, whom he had never seen before, back to Sheffield from which he had just come, to obtain the services of a truck-wrecker. Arrived in Sheffield some seven miles away, a truck-wrecker was not immediately available and Helm proceeded to resume his interrupted journey to Barnes. Ewing decided to remain in Sheffield and asked Helm to place flares about the immobilized truck as he went by on his way to Barnes. With unabated Samaritanism Helm promised to do this.

Riding with Helm was a Reed McCoy. They arrived the second time at the scene of the wrecked truck about 2 or 3 a.m. McCoy planted a flare about 200 feet north of the truck and Helm prepared to set one close to the truck itself. He lighted the flare and in the immediate instant he was, as he himself described, "engulfed in a ball of fire." A terrific explosion rocked the scene and Helm threw himself to the ground endeavoring to extinguish the flames which enveloped his body. The nature and the number of the burns which his body and limbs suffered are not the subject of any question on appeal, so no discussion will be made of them except to say that the jury on examining his scars in the courtroom awarded him a verdict in the sum of $17,500.

The Majority has reversed the verdict but it is not clear why. The jury found the South Penn Oil Company guilty of negligence in allowing so dangerous an instrumentality as an exposed gas pipe in juxtaposition to a travelled highway, knowing full well the possibilities of a vehicle striking the pipe and releasing its explosive contents.

The facts in the case of *Blassotti v. Greensboro Gas Company,* 105 Pa. Super. Ct. 403, are strikingly similar

to those in the case at bar. There the plaintiff's automobile was destroyed when it came into contact with a gas valve of the defendant's pipe line, which was located between 2 and 3 feet away from the beaten roadway and at the edge of a shallow ditch along the side of the road. Most of the pipe line was buried but at the point of collision it projected above the ground 8 to 10 inches. In contesting the verdict returned in favor of the plaintiff, the defendant argued that the ". . . road must be limited to the beaten or travelled portion, and that as the defendant's valve projection was two or three feet away from the beaten or traveled part, it was not in the public highway at all . . ." In rejecting this contention, the Superior Court pointed out that the supervisors of the township maintained the ditches, and that the public road was recognized to be 33 feet wide, not the varying width made by the tracks of passing vehicles: "The court below having correctly ruled that the defendant's valve or valve covering was located in the public highway, submitted the question of its negligence in maintaining it there to the jury in accordance with the pronouncements of the Supreme Court in [citing cases.] . . . the verdict for the plaintiff resolves any disputed questions of fact in his favor. Indeed it is not hard to understand that a jury might find a projection of this size, so near the traveled portion of the highway, a more dangerous obstruction than a much larger one, such as a post or pole, which would be more easily seen by travelers on the road."

A consideration of the case of *Emery v. Philadelphia*, 208 Pa. 492, is exceedingly important in the disposition of the question before us. There the plaintiff's decedent was killed by coming into contact with a broken fire alarm wire lying at the side of the road. The involved defendant municipality urged contributory negligence and cited cases. This Court, in affirm-

ing the plaintiff's verdict, said: "But none of these cases give any support to the contention that the city, or even a borough or township may with impunity leave a highly dangerous and insidious obstruction, such as a heavily charged and exposed electric wire, on any part of a public highway, or so near it that a traveler accidentally or intentionally deviating a few feet from the beaten track, may encounter it to the risk of life. On the contrary it has been uniformly held that those using this new and dangerous agent are bound to the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to the wires, and liable to come, accidentally or otherwise, in contact with them: Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540."

There is but little choice between a charged electric wire and a gas pipe which may emit explosive flames.

In *Ide v. Lake Township,* 191 Pa. 182, this Court held that where an obstruction or dangerous instrumentality lies within the dedicated limits of a road, those charged with the maintenance of the road are liable for accidents resulting from the obstacle or dangerous agent even though the perilous object lies "two feet or five feet or ten feet from the track ordinarily used by those who traveled the road with vehicles," as stated by the lower Court, whose decision this Court affirmed.

The Henry Mills Road involved in this case is the localized name of Commonwealth Route No. 666, which, according to official plans introduced at the trial, is 50 feet wide although the macadamized portion covers a breadth of only 16 feet. M. A. Sauter, official caretaker of Route No. 666 in Sheffield Township, testified that the exposed gas pipe rested within the 50 foot right of way, and that it was part of his official du-

ties to maintain the ditch involved in the accident: "Q. Is it a part of your duties as caretaker of roads in Sheffield Township to take care of not only the paved portion but the drainage ditches on either side and the full right of way that you make use of? A. That is right."

In the *Blassotti* case, the Court made it very clear that: "The ditches alongside and draining the road, when worked on by the supervisors as part of the road, are just as much included in the public road as the beaten track, (Ide v. Lake Twp., 191 Pa. 182.)"

I cannot grasp from the Majority's Opinion on what theory this Court reverses the jury's decision. The Majority says that "there is no evidence that the truck ever ran into or ran across or struck the gas pipe." There was testimony that less than an hour and a half before the accident, the pipe was intact and after the accident the pipe was severed. At the point of the accident the horizontal pipe entered an elbow which guided it vertically into the ground. After the accident the elbow was broken and the pipe bent into semi-circular shape. The presence of the truck at this very point spells out conclusively the cause of the breakage. However, if the truck did not break the pipe the defendant company would be liable on even a more serious and impelling charge of negligence for allowing a 2 inch gas pipe to remain open to the world. The quantity and force of the gas emerging from the pipe after the ignition was such that it shot flames unceasingly to a height of ten feet. To allow an open gas pipe discharging gas which, upon contact with any spark, shoots death, mutilation and destruction for at least a radius of ten feet is obviously negligence per se.

The only question in this case is foreseeability. Could the defendant company reasonably foresee that

a wheel or wheels of a passing vehicle could momentarily slip off the paved portion of the road and strike the pipe? The pipe was only 3 or 4 feet away from the road which was bordered by a berm. It is a matter of common knowledge that vehicles and especially trucks often allow their lateral wheels to slip fleetingly on to the berm and even on to the soft earth next to the berm. The company here may not defend on the basis that no perfect driver would allow any part of his vehicle to touch the drainage ditch in which the exposed pipe lurked. One protects not against perfection but against what may likely happen. The drainage ditch was so shallow and bevelled that it could well at night seem to be part of the berm.

The lower Court in sustaining the verdict well said: "Surely the jury gave its verdict because it believed that defendant was negligent in permitting the gas line to be at the edge of the ditch, thereby rendering the explosion possible, which, as above indicated, evidently occurred on account of the breaking of the pipe by Ewing's car. *If the portion of the gas line which was sticking out above the ground had been buried, or if the protruding portion had been a short distance from the right of way, the accident would, in all probability, not have occurred.*" (Emphasis supplied).

Allowing the pipe line to extend above the surface constituted sheer indifference to the safety of the general public. This exposed state served no useful purpose to the company and offered a hazard to anyone who happened to be in its vicinity. It imperilled not only vehicles but pedestrians lawfully in the area. A venomous snake in the grass could not have been more dangerous to the unwary traveller than this pipe line hiding in the bushes and weeds.

The cases cited by the Majority cannot justify a reversal of the verdict here. The Majority cites *Dahlstrom v. Shrum,* 368 Pa. 423, in which Justice ALLEN STEARNE said: "The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act."

But that is exactly what the plaintiff maintains here, namely, that the South Penn Oil Company could have anticipated and foreseen the likelihood of harm to himself and others; and the jury, being given that very question to resolve, decided that the company should have anticipated the resulting harm.

The Majority cites *Brusis v. Henkels,* 376 Pa. 226, where the plaintiff was denied a recovery when he drove off the paved highway on the wrong side of the road. But in that case signs had been posted warning travellers of "soft and dangerous shoulders" where a trench was being excavated. But there was no warning in the case at bar. At most a rod some 5 feet high with no indication as to what it meant stood up above the bushes but it was located some 3 feet beyond the exposed pipe. A lighthouse that throws its beams on the distant side of treacherous rocks cannot be of much aid to ships seeking its guidance and protection.

I dissent.