## Gramby v. Philadelphia Transportation Company

*Cavanaugh & Murphy*, for plaintiff.

*G. A. Troutman*, for Sheppard Distributors, Inc., and Harry Lehner.

*S. K. White* and *W. J. McKinley, Jr.*, for PTC.

SLOANE, P. J., May 2, 1960.—Singleton was in a Philadelphia Transportation Company bus when it and a truck collided, and Singleton, in a negligence com-

plaint against PTC, the owner, and the driver of the truck, says he was hurt and he wants damages. Singleton is a professional boxer; as such he has a manager, Joseph Gramby, this plaintiff; and Gramby brought this suit in trespass against the same three defendants, alleging that Singleton's hurt is his hurt, a pecuniary loss to Gramby, both out-of-pocket and expectancy. Singleton was hurt and he cannot fight; Gramby loses a percentage of any fight returns and must pay Singleton a certain guaranteed annual sum by indemnification.

Defendants raise preliminary objections. The one that brings up our thought is directed to the cause of action.

Intentional, willful, or even reckless, hurt to Singleton is not averred; if this were the averment, it could be said defendants or any willful ones would suffer liability to Gramby, unless the otherwise tortious conduct was privileged: Prosser, Torts (2d ed., 1955) §106; Restatement of Agency, 2d §306(1); Restatement of Torts §766. Cf. 2 Am. Jur. 303, Agency, §386. Or, as we know, were the tortious conduct upon a wife or child, the husband or parent would have a cause of action: Prosser, op. cit. §104; Restatement of Torts §§693, 703. But Gramby is neither. He wants us to broaden the base of liability; he urges that his relationship with Singleton is at least master and servant, and more than least that Singleton is in the category of a "chattel."

We find it easy to reject at once the notion that any human being is a chattel. The idea is ". . . so odious that nothing can be suffered to support it . . ."; Lord Mansfield. See Mr. Justice Douglas, An Almanac of Liberty, p. 371. "A servant has long since ceased to be regarded as a slave. It is time he ceased to be looked on as a chattel. He should be looked on as a free human

being, . . .": Inland Revenue Commissioners v. Hambrook, 3 Eng. Rep. 338, 344 (1956).

This case is written out in extenso in 57 A. L. R. 2d 790, et seq., and in it is well traced the history of the old writs in the year books and the action per quod servitium amisit. But historic continuity with the past, as Holmes would have it, is not a duty, but only a necessity and we happily are far from the sphere of human domination by block or word or relationship. Whether relics of domestic status remain (see Fairmount and Arch Street Passenger Railway Company v. Stutler, 54 Pa.375, 379; Pollock, Torts (13th ed., 1929), p. 231) is not to our point, for most generally the voluntary relationship between man and man is one of contract. And, here too, there is a contract between Singleton as boxer and Gramby as his manager. It may be that Gramby's rights under this contract exceed those of Singleton, that Singleton may not fight or do a "commercial" without Gramby's prior approval, but Singleton as a party has rights too. Gramby does not own Singleton; Gramby's status is not that of "autocratic omnipotence"; Singleton could depart Gramby without leave, and Gramby could gather up whatever damage comes to him from Singleton's breach, no more, unless there be some injunctive process to Gramby upon which we do not pass. But Gramby's control is contractual, not the control born of whim or force or arbitrariness of an owner over the inanimate or the animal.

To compare a boxer to the ballplayers, as plaintiff does, makes an imperfect analogy. It is the fact that Mickey Mantle (plaintiff chose him as an example) has the alternative to renew with the Yankees or sit out the baseball season; he may not offer himself to another club. But this comes from the reserve clause by which the baseball clubs have agreed among themselves to respect other clubs' claims to the exclusive services

of their own players. Compare Toolson v. New York Yankees, Inc., 346 U. S. 356, with Radovich v. National Football League, 352 U. S. 445. See United States v. International Boxing Club of New York, Inc., 348 U. S. 236.

To argue that Singleton is a servant or an agent, as defendants argue, leads to no substantive distinction; we do not decide the issue here on the one premise or the other, or on a difference between the principal-agent and master-servant relationship. We decide this case on the basis of the imprudence of consequence that most likely will follow the allowance of recovery in these and like situations or circumstances. If these defendants are to account not only for the harm suffered by the injured person, but also for the pecuniary loss to one whose gainful contract with the injured one is disturbed, then the scope of liability for negligence and the number of sequential cases is made too broad and too large.

Viewed in this light, it would appear that, although Singleton's value to Gramby under their contract is single in kind, that perhaps he cannot readily be replaced, this situation is no different from any other involving a unique employe or artisan. If these defendants must be held liable not only for the harm suffered by the injured person himself, but also for the loss to one who by reason of contract or other relationship stands to benefit from the injured person's services, then the scope of liability for negligence will be vastly increased. Not only that, but the number of cases in which such a dual liability would result would also be great, for there are many such persons whose services in sundry endeavors are unique to others who benefit from them. Where a tortfeasor has acted negligently and not intentionally or recklessly and does not know the special category of the injured person, he has no reason to be more careful as to him than as

to another whose injury will cause economic loss only to the injured one. The duty of due care is owed to all and when that duty is breached by negligent conduct there is no basis for making a distinction and reaching a different result based on the economic attachment of the injured person.

We do not pause for labels possessed of their own tyranny. Such phrases as "foreseeable risk", "scope of the risk," "duty owed" may achieve results but often do not solve problems. See Prosser, op. cit., §36; Harper and James, Torts, sec. 6.10, pp. 509-10; Harper, Interference with Contractual Relations, 47 Nw. U. Law Rev. 873, 884. See also Prosser, Palsgraf Revisited, 52 Mich. Law Rev. 1 et seq., cf. Dahlstrom v. Shrum, 368 Pa. 423; Helm v. South Penn Oil Company, 382 Pa. 437.

We reach a conclusion fresh from the egg; authority and precedent do not fashion a result in this situation, though a dictum in one case points in our direction. Referring to the relationship of master and servant and a suit by the master for loss of services of his servant by the negligence of a third party, our Supreme Court thought it ". . . extremely doubtful whether such a right of action should be recognized under modern conditions. It had its beginnings at a time when the relation of master and servant was totally different from that of today": Philadelphia v. Philadelphia Rapid Transit Company, 337 Pa. 1, 5. See annotation at 57 A. L. R. 2d 802, et seq. The Philadelphia Rapid Transit Company case is conclusive as to this: The part of this plaintiff's claim which seeks indemnification for the guaranteed payments may not be maintained in an independent action, but Gramby's remedy is as intervenor in Singleton's trespass action. On the other hand, the United States Court of Appeals for our Third Circuit, in a diversity case involving

Pennsylvania law under the Erie doctrine, spoke a dictum or belief that an employer would be allowed to recover from a negligent tortfeasor for the value of the services of his injured employe under Pennsylvania law: Jones v. Waterman S. S. Corporation, 155 F. 2d 992, 1000. But with great deference to that high court, we are not bound by this dictum and so we seek our own solution.

We conclude that Gramby in his circumstance has no cause of action against these defendants. The pertinent preliminary objection is sustained, and the complaint is dismissed.