**Alvin H. FRANKEL, Administrator of the Estate of Michael Acquesta, Deceased,**

v.

**WILLOW BROOK MARINA, INC. and Carole Kleinfelder.**

**Civ. A. No. 35000.**

United States District Court
E. D. Pennsylvania.

Nov. 8, 1967.

Edward J. Marcantonio, Philadelphia, Pa., for Carole Kleinfelder.

## OPINION

LUONGO, District Judge.

On July 30, 1963, Michael Acquesta, 8½ years of age, drowned in a swimming pool operated by Willow Brook Marina, Inc. (Marina). Minutes before he was found unconscious on the bottom of the pool, Michael had been one of a group of four children receiving swimming instructions in a class conducted by Carole Kleinfelder (Carole), a lifeguard employed by Marina.

This suit seeking damages under the Wrongful Death and the Survival Acts was instituted by minor decedent's administrator against Carole and Marina. The claim against Marina sought to hold it liable for Carole's conduct on principles of respondeat superior, and, in addition, charged it with independent acts of negligence. Marina cross-claimed against Carole seeking to be indemnified in the event it were to be held liable solely because of Carole's negligence.

The claims and cross-claims presented several issues: Whether Carole was negligent; whether, in giving swimming instructions, Carole was Marina's agent or was an independent contractor; and whether Marina was guilty of independent acts of negligence. The issues were submitted to the jury by interrogatories. By its answers, the jury found that Carole was acting as Marina's agent; that she was not guilty of negligence which was a proximate cause of the accident; and that Marina was guilty of negligence, apart from Carole's conduct, which was a proximate cause of the accident. The jury assessed damages under the Wrongful Death Act in the amount of $1,308.50 (funeral expenses), and under the Survival Act in the amount of $4,691.50. On those answers, a verdict was entered in favor of plaintiff against defendant Marina, and verdicts in favor of defendant Carole were entered on plaintiff's complaint and on Marina's cross-claim.

Andrew F. Napoli, James M. Moran, Philadelphia, Pa., for plaintiff.

John T. Quinn, Philadelphia, Pa., for Willow Brook Marina, Inc.

Before the court are Marina's motion for judgment n. o. v. and, in the alternative, for a new trial, and plaintiff's motion seeking a new trial. Judgment n. o. v. will be denied. A new trial will be granted.

*Facts.*

A fairly comprehensive recitation of the facts is necessary to an understanding of the motions and their disposition.

In July 1963, Michael's father inquired of Mrs. Shaner, an officer of Marina, whether swimming instructions could be had at corporate defendant's pool. He was informed that the lifeguards gave swimming instructions; that the charge was $5 for 5 lessons plus $1 as an admission charge to the pool; that it was not necessary for anyone to accompany Michael to the pool for the lessons if he brought the money with him. Mrs. Shaner introduced Mr. Acquesta to Carole and told Carole that she would have Michael as a pupil in her class.

The pool was open to the general membership from 11 a. m. to 9 p. m. daily. The two lifeguards, Carole and 17 year old Paul McMahon, were paid $1 an hour for the hours they worked while the pool was open, but they were expected to perform certain cleaning chores before the opening. When the lifeguards were hired they were told that they could supplement their pay by giving swimming lessons at the pool. The amount of the charge for the instructions was fixed by the lifeguards, but it was subject to Marina's approval. The lessons were to be given in the morning before the pool opened to the general membership.

The pool, was also used by the lifeguards in the morning pre-opening hours to teach and to supervise practice sessions of routines to be used in an aquatic show to be put on at the pool. Each morning Mrs. Shaner unlocked the gate in the fence which surrounded the pool to admit the lifeguards for the pre-opening activities which were conducted with her knowledge and approval.

On July 29, 1963, Michael attended his first class. Because of his complete unfamiliarity with swimming, Carole classified him as a "beginner-beginner", one who should not be in or near the water unattended. Michael was frightened and nervous. On July 30, at the second lesson, Michael was still frightened and nervous and complained about not feeling well. Carole permitted him to get out of the water and sit on the apron of the pool. While the swimming class was being conducted at the shallow end of the pool, four other young people were in the pool, at the deep end, practicing for the aquatic show. When the swimming class session ended, Carole dismissed the four pupils. Two of them wanted to go to the deep end of the pool to practice diving. Carole swam to the deep end to oversee that activity. When she did, one pupil remained in the pool at the shallow end, and Michael was in the vicinity of the pool, out of the water but within the fence enclosure. In addition, the four young people who had been practicing for the aquatic show and who had been ordered out of the pool when Carole went to the deep end to watch over the two pupils diving, were in the vicinity of the pool. While all this was going on, the other lifeguard, Paul McMahon who was scheduled to go "on duty" when the pool opened at 11 a. m., was at pool side, reading. Michael's body was discovered at the bottom of the pool at approximately the 7 foot depth when Carole and the others were leaving the pool area preparatory to the pool opening to the general membership.

*Marina's Motion.*

Marina's motion for judgment n. o. v. is based on its contention that there is no evidence that it was negligent. Its alternative motion for new trial is on the ground that the clear weight of the evidence establishes that if any one was negligent, it was Carole, and the jury's finding absolving Carole of negligence deprived Marina of the right of indemnity from Carole.

█ The n. o. v. motion need not detain us. The test was stated thus in

Morris Brothers Lumber Co. v. Eakin, 262 F.2d 259, 263 (3d Cir. 1959):

"It is well established that a motion by a defendant for judgment n. o. v. under Rule 50(b) of the Federal Rules of Civil Procedure presents only the question of law as to whether when all the evidence is considered, together with all reasonable inferences which may be drawn therefrom most favorably to the plaintiff, there is a total failure or lack of evidence to prove any necessary element of the plaintiff's case."

■ There is ample evidence from which the jury could have found that Marina failed to give adequate instructions to its teen-age lifeguards and failed to provide adequate supervision during the pre-opening hours when the pool was being used, with Marina's knowledge and consent, for aquatic show practice and swimming instructions. There was some evidence that Mrs. Shaner was in the snack bar on the morning in question. The jury could have found that if she had exercised reasonable care, she should have observed the scattered activities and should have taken steps to put a stop to them or to order the other lifeguard to go "on duty" before opening time. There was also evidence that the lifeguards were expected to perform certain chores before going "on duty", i. e. before the pool opened, although they were *paid* only for the hours they worked when the pool was open. The jury could have found, therefore, that the lifeguards were in the course and scope of their employment for Marina even prior to opening time; that the other lifeguard, Paul, was in the course and scope of his employment when he was at pool side when these activities were going on; and that he was negligent for failing to keep a watch on the activities in and about the pool.

Marina's motion for judgment n. o. v. will be denied. Its motion for new trial will not be discussed separately but will be disposed of by the disposition of plaintiff's motion for new trial.

*Plaintiff's Motion.*

Plaintiff's motion for new trial is on the grounds that (a) the court gave improper instructions as to the degree of care to be exercised by defendants; (b) the verdict exonerating Carole of liability was against the weight of the evidence; and (c) the verdict was inadequate.

(a) *Improper Instructions.*

■ The court instructed the jury that the defendants owed the minor decedent the duty to exercise reasonable care under the circumstances. Plaintiff contends the jury should have been instructed that defendants owed the "highest duty of care", citing Burwell v. Crist, 373 F.2d 78 (3d Cir. 1967). In the *Burwell* case the minor decedent, a camper enrolled for riding lessons, was fatally kicked by one of the horses used in the riding program. Judgment was entered for the defendants. On appeal, it was held that the trial court had committed reversible error in rejecting certain testimony and that the rejected testimony together with other evidence in the case was sufficient to require submission of the issue of negligence to a jury. At no point did the Court of Appeals address itself to the wording of instructions to accompany the submission of the issue to the jury. In the course of its opinion, the Court of Appeals did indicate that the circumstances there were such as to require the "highest duty of care" and the "highest degree of care". Such expressions are used in Pennsylvania cases dealing with dangerous instrumentalities, e. g. Kühns v. Brugger, 390 Pa. 331, 135 A.2d 395 (1957); Helm v. South Penn Oil Co., 382 Pa. 437, 114 A.2d 909 (1955); Karam v. Pennsylvania Power and Light Co., 205 Pa.Super. 318, 208 A.2d 876 (1965). Whatever the requirement may be to instruct the jury in terms of the "highest duty of care" in cases involving dangerous instrumentalities, it is not applicable to operators of swimming pools.

In Zeman v. Canonsburg Boro, 423 Pa. 450, 223 A.2d 728 (1966), with re-

spect to the duty owed by operators of a swimming pool to a minor patron, it was said, at page 453, at page 729 of 223 A.2d:

> "The trial Judge correctly instructed the jury that defendant was not an insurer but that it owed a duty of reasonable care under all the circumstances."

To the same effect, in DeSimone v. City of Philadelphia, 380 Pa. 137, 141, 110 A.2d 431, 433 (1955), after a governmental immunity defense was rejected:

> "Acting in its proprietary capacity in maintaining and operating the swimming pool involved in this litigation, the City of Philadelphia was therefore required to exercise due care under the circumstances."

The jury here was properly instructed to assess the reasonableness of defendants' conduct in light of all the surrounding circumstances.

(b) *Verdict against the weight of the evidence.*

██ Although there is support for the jury's verdict absolving Carole of fault, in my view its verdict is against the weight of the evidence and the interests of justice require a new trial. A jury's verdict is not lightly to be set aside, but in proper cases the power must be exercised.

> "Where a trial Judge or Court sees and hears the witnesses, it has not only an inherent fundamental and salutary power, but it is its duty, to grant a new trial when it believes the verdict was capricious or was against the weight of the evidence and resulted in a miscarriage of justice.
>
>   *   *   *   *   *   *
>
> One of the least assailable grounds for the exercise of such power is the trial court's conclusion that the verdict was against the weight of the evidence and that the interests of justice therefore require that a new trial be awarded * * *."

Clewell v. Pummer, 388 Pa. 592, 598–599, 131 A.2d 375, 378 (1957).

See Wylie v. Powaski, 422 Pa. 285, 220 A.2d 842 (1966); Sarachman v. Avery, 419 Pa. 330, 214 A.2d 247 (1965).

Carole was a licensed lifeguard and was aware of the dangers of leaving non-swimmers in the area of a swimming pool without adequate supervision. She had in her care, and was responsible for the safety of, four children of varying degrees of inability to swim, ranging from "beginner-beginner" to "intermediate beginner". Further, one of those childern was frightened and nervous and had exhibited some signs of illness. Carole was aware that the pool was not yet open and that the other lifeguard, although on the premises, was not "on duty" and consequently not likely to be keeping a look out. Under such circumstances, the exercise of reasonable care would seem to require, at the very least, that the activities of the four pupils be confined to an area which would enable Carole to maintain constant vigil over all of them. Apparently she did this so long as the class was in session but when the instructions had concluded, she permitted the children and the activities to scatter, leaving at least two of the children unattended in and near the water. It seems fairly obvious that she should either have escorted the children beyond the enclosure or enlisted the aid of the other lifeguard to help oversee the broadened area of activity. After a review of the evidence, I am left with the impression that the jury's verdict in Carole's favor was based more on sympathy than on the evidence. Carole was 19 years old at the time this accident happened. She was a college student who worked as a lifeguard and gave swimming instructions to help pay for her education. Her commendable industry and her quite considerable personal charm, together with the presence of a corporate defendant upon which to impose a measure of liability, may well have influenced the jury to treat Carole more leniently than the evidence warranted.

*(c) Inadequacy of verdict.*

Plaintiff concedes that the award of $1,308.50 under the Wrongful Death Act is proper, but contends that the award of $4,691.50 under the Survival Act is grossly inadequate. It should be noted that plaintiff produced very little evidence on the issue of damages. Under the Survival Act, of course, plaintiff was entitled to recover for the decedent's estate the present worth of the excess of decedent's future earnings over the cost of his maintenance. The only evidence bearing on this issue was that minor decedent's father was employed as a technical specialist; that he had been with the same company for 25 years and was earning approximately $11,000 a year; that he was purchasing United States Savings Bonds regularly to provide for Michael's education; that he hoped to send Michael, the oldest of his six children, to college; and that Michael had done reasonably well in the first three years of school. On such evidence, it cannot be said that the jury's award of approximately $4,700, although admittedly low, has *no* support, but the meagerness of the award does suggest a compromise. If the jury intended it as a compromise because of doubtful liability, it was proper, Karcesky v. Laria, 382 Pa. 227, 114 A.2d 150 (1955), but if, as I strongly suspect is the case, the jury exonerated Carole for reasons of sympathy and then compromised the award of damages because of a reluctance to impose the full burden on corporate defendant, the compromise was improper. I would not, and do not, grant a new trial on the ground that the verdict is inadequate, but the suspicion that the size of the award may have been improperly influenced by the desire to give a half-measure of recovery against one defendant rather than a full measure against two defendants is an added reason for ordering a new trial in the interests of justice.

Plaintiff's motion for new trial will be granted. He will have the opportunity to present his claim anew against both defendants. Marina's motion for new trial will be granted and Marina will be afforded the opportunity to relitigate the issues presented in its cross-claim against Carole.